CLEVELAND POLICE PATROLMEN'S ASSOCIATION, APPELLEE AND APPELLANT, *v.* CITY OF CLEVELAND ET AL., APPELLANTS AND APPELLEES.

(Nos. 48565 and 48623 — Decided March 25, 1985.)

*Cozza & Steuer* and *John T. Price,* for Cleveland Police Patrolmen's Assn.

*John D. Maddox,* director of law, *Peter N. Kirsanow* and *Donald F. Black,* for city of Cleveland et al.

PRYATEL, J. The Cleveland Police Patrolmen's Association (hereinafter "CPPA") appeals the denial of damages in the form of interest on a retroactive wage increase granted to patrolmen by the city of Cleveland (hereinafter "city")

pursuant to an arbitration panel's binding award that was adopted by Cleveland City Council.

The city appeals the ruling that a provision for binding arbitration in a CPPA-city agreement is not an unlawful delegation of legislative power and that the city's tardiness in implementing the arbitration award constituted a breach of contract.

We affirm in part and modify in part for the reasons given below.

This action arose when the CPPA filed (1) an application for confirmation of an arbitration award, (2) complaint that the city had breached its contract with CPPA, and (3) complaint for an injunction to enjoin the city from continued breach of the contract.

The CPPA and the city had entered into a 1979-1980 Memorandum of Understanding (hereinafter "agreement") which provided for binding arbitration in the event the two parties reached an impasse on any issue. The agreement was adopted by the Council of the city of Cleveland on March 13, 1978 by passage of Ordinance No. 427-78.

The CPPA and the city reached an impasse in negotiations on a wage increase for the calendar years 1979 and 1980. In accordance with the agreement, the CPPA made a written demand, acceded to by the city, to submit their differences to final and binding arbitration. Following hearings before a panel comprised of the impartial arbitrator and representatives selected by the CPPA and the city, an arbitration award was issued on September 7, *1979*. The city's representative on the tripartite arbitration panel concurred in the award, but the CPPA representative dissented. *Inter alia,* the award provided for a wage increase for some sixteen hundred patrolmen to be effective January 1, 1980, *upon passage of an applicable ordinance.*

The wage increase was not placed into effect by the city on January 1, 1980. On April 10, 1980, the CPPA filed an application with the common pleas court for confirmation of the arbitration award pursuant to R.C. 2711.09.

While the case was pending, the Cleveland City Council adopted an ordinance in June 1980 implementing the arbitration award with the wage increase retroactive to January 1, 1980, thus reducing the CPPA's claims to one for interest on the retroactive pay.

On April 9, 1984, the trial court found, *inter alia,* that (1) the city council had not unlawfully delegated legislative power by approving the provision for binding arbitration; and (2) that the city breached its contract with the CPPA by its failure to implement earlier the wage increases granted in the arbitration award. The court declined to award interest on the deferred pay increase due to the city's "perilous financial condition," and because it would "offend the court's notion of public policy and sound judicial discretion."

The city appeals the trial court's finding that (1) the binding arbitration provision did not constitute an unlawful delegation of legislative powers, and (2) the city's failure to implement earlier the arbitration award constituted a breach of contract, while CPPA appeals the denial of interest. The appeals were consolidated and submitted for our review.[1]

We shall begin with the city's assignments of error, the first of which is critical to the determination of the remaining issues.

City's Assignment of Error No. I

"I. The trial court erred in ruling that the binding arbitration provision of

---

[1] We consolidated the CPPA's appeal (case No. 48565) with the city's appeal (case No. 48623).

the 1979-1980 memorandum of understanding between the Cleveland Police Patrolmen's Association and the city of Cleveland did not constitute an unlawful delegation of legislative powers which would invalidate a wage increase arbitration award rendered pursuant to such binding arbitration provision."

The city contends that the binding arbitration provision of its agreement with the CPPA violates the city's charter and the doctrine that legislative powers may not be delegated.

Section 191 of the Cleveland Charter provides in pertinent part:

"The salary or compensation of all officers and employees in the unclassified service of the City shall be fixed by ordinance, or as may be provided by ordinance. The salary or compensation of all other officers and employees shall be fixed by the appointing authority in accordance with ability, fitness and seniority within the limits set forth in the Council's salary or compensation schedule for which provision is hereinafter made. The Council shall by ordinance establish a schedule of compensation for officers and employees in the classified service, which schedule shall provide for like compensation for like services and shall provide miminum and maximum rates (which may be identical) of salary or compensation for each grade and classification of positions determined by the Civil Service Commission * * *. *For the guidance of Council in determining the foregoing schedule the Civil Service Commission shall prepare salary or compensation schedules, and the Mayor or any director may, and when directed by Council shall, prepare suggested salary or compensation schedules."* (Emphasis added.)

The language of Section 191 of the charter places a duty upon council to establish a salary or compensation schedule, but authorizes the preparation of suggested salary or compensation schedules by the civil service commission, the mayor or any director.

Thus, delegating the determination of suggested schedules is permissible as long as council establishes, through legislative policy, intelligible principles to which the arbitration panel must conform. In this case, they were provided by council in its adoption of Ordinance No. 427-78 which set out the following standards to be considered by the panel:

"(i) The lawful authority of the City;

"(ii) The interest and welfare of the citizens of the City; and the financial ability of the City to meet the costs of any proposal considering the other costs and obligations of the City;

"(iii) A comparison of the wages, hours, benefits, and conditions of employment of the Patrol Officers with the wages, hours, benefits and conditions of employment of employees of other comparable police departments in the State of Ohio performing similar services and with other employees generally;

"(iv) The overall compensation and benefits received by Patrol Officers, including direct wages, vacations, holidays, sick time, leave time, insurance, pension, medical and hospitalization benefits and the continuity and stability of their employment compared with other employees in both the public and private sectors;

"(v) The operating problems of the City and the protection of the rights of Patrol Officers to fair treatment in working conditions."

It was the intent of the city and CPPA that the agreement comply in every way "with applicable legal statutes, charter requirements and governmental regulations which have the effect of law, and judicial opinions * * *." Memorandum, Article XXIII.

The arbitration panel made its award effective January 1, 1980, but provided that it would go into effect "upon passage of an applicable or-

dinance." Under state law, if the panel exceeded its power or otherwise violated its trust,[2] either party could avail itself of the procedure in the Revised Code which authorizes the filing of a motion in the common pleas court to vacate an arbitration award.[3]

Notwithstanding that alternative, the council in June 1980 adopted the arbitration award as issued.

By authorizing submittal of impasse issues to binding arbitration, the council did not unlawfully delegate its legislative powers, since it retained its powers and properly exercised them by carefully setting out the standards that were to govern the arbitration. Not all delegations of legislative power are unlawful. To the contrary, an ordinance does not unlawfully delegate legislative power if it establishes, through legislative policy and such standards as are practical, an intelligible principle to which an arbitration panel must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively. Cf. *Blue Cross* v. *Ratchford* (1980), 64 Ohio St. 2d 256, 260 [18 O.O.3d 450].

The rule that a legislative body may fix a standard and then lawfully delegate authority under that standard was enunciated in this state as early as 1929. *State, ex rel. Srigely,* v. *Woodworth* (1929), 33 Ohio App. 406. Delegation of authority to zoning and licensing boards and administrators consistently has been upheld. See 38 Ohio Jurisprudence 2d (1959) 663, Municipal Corporations, Section 263. In *In re Appeal of Clements* (1965), 2 Ohio App. 2d 201, 213 [31 O.O.2d 328], we held that power may be delegated as long as it is made subject to a standard or rule. See, also, *State, ex rel. Alesnik,* v. *DiCello* (Nov. 17, 1977), Cuyahoga App. Nos. 37142 & 37546, unreported.

Whether a legislative provision for binding arbitration to resolve labor disputes is an unlawful delegation of legislative power was considered by the Michigan Supreme Court. It held that such delegation was not unlawful and that the only requirements for sustaining the dispute resolution mechanism "is that the statutory scheme provided standards at least as reasonably precise as the subject matter requires or permits,"

---

[2] R.C. 2711.10 provides in pertinent part:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by corruption, fraud, or undue means.

"(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

[3] R.C. 2711.13 provides:

"After an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code.

"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of a motion in an action. For the purposes of the motion, any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

and judicial review. *City of Detroit* v. *Detroit Police Officers Assn.* (1980), 408 Mich. 410, 463, 294 N.W. 2d 68, 86. Additionally, we are mindful that "[i]t is the policy of the law to favor and encourage arbitration and that every intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts." *Campbell* v. *Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329 [55 O.O. 195], adopted by *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 132 [70 O.O.2d 223]. In return for the binding arbitration clause, we note that the city was granted labor peace in the form of a no-strike clause, a sought-after provision in the labor relations field.

The city council possessed the authority to delegate legislative power as long as it established standards to which an arbitration panel had to conform and there was a procedure under which the exercise of discretion could be effectively reviewed. Both of these provisions were satisfied when council enacted the ordinance adopting the standards while retaining the right to review provided by state law pursuant to R.C. 2711.13. The agreement itself recognized in its compensation schedules the council's authority to finally approve wage increases. Additionally, in June 1980, when council approved Ordinance No. 1130-80 adopting the report of the panel, it reviewed the exercise of discretion by the panel and concluded that the mandate placed upon the panel by Ordinance No. 427-78 was followed. In effect, it adopted the panel's report as its own. Thus, the order of the panel did *not* become effective *ipso facto* upon its issuance, but became binding only when council "fixed" the salary or compensation of all police officers when it gave its approval through passage of Ordinance No. 1130-80.

In passing, we note that the city participated in the arbitration process and its representative concurred in the award. Nevertheless, the city places itself in the anomalous position of challenging an arbitration award to which it was a full and consenting party. It authorized binding arbitration, participated without reservation in the hearing and in selection of the panel, concurred in the panel's award through its own representative and finally, it enacted the award by an ordinance of council. The city also failed to avail itself of the judicial review provided by R.C. 2711.13. It cannot now be heard to repudiate the validity of the arbitration. Thus, the city is estopped from repudiating the contract by its participation in the arbitration proceedings on the highest level of both the executive and legislative departments and by its failure to seek judicial review.

In reaching our conclusion, we are not unmindful of the cases cited involving school districts. Our review reveals that they endorse compulsory arbitration. See, *e.g., North Royalton Edn. Assn.* v. *Bd. of Edn.* (1974), 41 Ohio App. 2d 209 [70 O.O.2d 434]. However, we find the school cases to be limited to arbitration of grievances. Additionally, binding arbitration confined to interpretation and applications of contract terms is held not to be an unlawful delegation of school board authority. *Id.* at 218. Finally, we note that school boards operate under special provisions of state law.

The first assignment of error of defendant-appellant city is overruled.

### City's Assignment of Error No. II

"II. The trial court erred in ruling that defendant's delay in implementing a binding arbitration wage increase award constituted a breach of contract."

In substance, the city argues that the court erred in finding that the city's lack of promptness in paying the wage increase mandated by the award constituted a breach of contract.

The city's contention that the contractual agreement was invalid *ab initio* because the council unlawfully delegated its authority is answered by our holding that there was no unlawful delegation.

This is as much a case in contract as was *S & M Constructors* v. *Columbus* (1982), 70 Ohio St. 2d 69, 71 [24 O.O.3d 145], in which the court asserted:

" 'A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intentions of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument.' *Hollerbach* v. *United States* (1914), 223 U.S. 165, 171-172."

The language of the "contract" here is clear. Both parties agreed to be bound by the determination of the arbitrators. In not implementing the binding arbitrators' wage package more promptly, was the city in breach of contract?

We turn to the agreement. We find the contract specific in its schedule of when certain acts are to be performed, *i.e.*:

1. Within ninety days of expiration, negotiations to be reopened;

2. After sixty days of negotiations, arbitration may be invoked;

3. Within five days, agree on impartial arbitrator;

4. Within five days of selection of impartial arbitrator, final offers to be submitted.

Notably absent is any timetable setting out the period within which (1) the Cleveland City Council was to adopt the necessary ordinance, or (2) the arbitration panel was required to issue its report. Neither party sought to harness the careful consideration of the issue by any restraint of time.

Consequently, on implementation, time was not of the essence since the effective date of the award was based on the indefinite occurrence of "passage of an applicable ordinance."

That time was not critical is further supported by CPPA's delay in seeking confirmation pursuant to R.C. 2711.09 until April 1980, or seven months after issuance of the award, even though the city's right to "vacate, modify or correct" the award expired three months after its issuance, pursuant to R.C. 2711.13.

Apparently, council needed time to test the award against the criteria it established in Ordinance No. 427-78. That may have required referral to its committees, to the civil service commission, or to the personnel department, etc.

We find no provision in the agreement prescribing a definite time within which the city was contractually obligated to act upon the award.

In view of the agreed-upon indefinite provision that the award became effective "upon passage of an applicable ordinance," we conclude that the city did not breach the contract when it did not implement the award until June 1980.

The error assigned by the city is sustained.

CPPA's Assignments of Error
Nos. I and II

"I. The trial court committed error in ruling that it would not award as damages interest on deferred wage increases despite the fact that it found that the award of the increase did not result from an unlawful delegation of legislative power and despite the fact that the court found that the defendants had breached a contract between the parties by failing to pay the wages on time.

"II. The trial court erred in failing to award as damages interest on deferred wage increases by taking into consideration by way of judicial notice the perilous financial condition of the city of Cleveland, the reasonableness of the delay in paying the wage increases,

public policy, and sound judicial discretion." ·

Since both of the CPPA's assignments of error deal with the issue of interest, they will be treated together.

Simply stated, the CPPA argues that the court erred in failing to award as damages interest on the deferred wage increases paid by the city to its patrolmen.

Since we have held that there was no breach of contract, it follows that there is no interest due on the retroactive pay increase for the police officers. We also note that nowhere in the agreement or the award is there any provision for interest in the event of delay.

The CPPA's assignments of error are overruled. The city's first assignment of error (re delegation) is overruled and its second assignment of error (re breach) is sustained.

Since no damages were awarded or due, the judgment is affirmed.

*Judgment accordingly.*

MARKUS, P.J., and NAHRA, J., concur.