Rockingham
No. 90-052

CITY OF PORTSMOUTH

v.

ASSOCIATION OF PORTSMOUTH TEACHERS,
NEA – NEW HAMPSHIRE

October 4, 1991

*Robert P. Sullivan,* city attorney, and *Thomas E. Cayten,* chief negotiator, of Portsmouth (*Mr. Sullivan* and *Mr. Cayten* on the brief, and *Mr. Sullivan* orally), for the petitioner.

*James F. Allmendinger,* of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent.

HORTON, J.   This case comes up on cross-appeals from a decision of the Superior Court (*O'Neill,* J.). After a hearing on the two par-

ties' consolidated declaratory judgment actions, the court ruled that Portsmouth's 1987 City Charter Amendment D, which precludes binding interest arbitration on collective bargaining agreements, is lawful, but may only be applied to future contracts. The court also determined that the City's Charter Amendment B, which requires centralized negotiation and administration of collective bargaining agreements, and the city council's approval of contracts based on such agreements, is valid. We affirm.

Pursuant to part I, article 39 of the New Hampshire Constitution, and RSA chapter 49-B, the voters of the City of Portsmouth approved four amendments to their municipal charter. Two of these amendments, Amendments D and B, are contested in this case. Amendment D, placed on the ballot by a citizen initiative, provides that:

> "*No board*, commission, or legislative body, whether elected or appointed, *shall delegate its authority* to anyone not a member of its body, through the inclusion of binding interest arbitration in collective bargaining agreements, such delegation abrogating the right of the people to control their taxes through their elected officials."

(Emphasis added.)

The purpose of Amendment D is to prohibit binding interest arbitration, a practice in which, if the parties to collective bargaining are unable to reach agreement, disputed terms are submitted to and decided by a neutral arbitrator. The arbitrator then imposes terms of the contract upon the parties. In the case before us, both the City and the Association of Portsmouth Teachers, NEA-New Hampshire ("association") have agreed to binding interest arbitration, by contract, since 1976, in order to provide for the final resolution of negotiation issues arising in the course of bargaining for the next succeeding contract.

The respondent association asserts that Amendment D is preempted by, and contrary to, RSA chapter 273-A, and is thus unenforceable. In addition to asserting the validity of Amendment D as applied to prospective agreements, the City challenges the practice of binding interest arbitration, generally, as an unlawful delegation of power. Therefore, in addition to soliciting confirmation of the legality of Amendment D, the City seeks to be relieved of its existing contractual obligation to engage in this practice.

The second issue involves Charter Amendment B, which provides:

"The Administrative Code shall provide for a municipal department which shall be solely responsible for the negotiation and administration of all collective bargaining agreements which are funded by the City of Portsmouth, including those agreements involving personnel of the Police Department, Fire Department, and School Department. Final approval of any contract shall be by vote of the City Council."

The association contends that the "final approval" provision extends to non-cost items, and therefore is prohibited by RSA 273-A:3, II(b), and that the City cannot circumvent the State statute via the "home rule" under part I, article 39 of the New Hampshire Constitution. The City contends that the required final approval concerns only cost items, and that the amendment should be read this way, to be consistent with the statute. The trial court agreed that the amendment seeks "bottom line" budget approval only and, therefore, does not conflict with RSA 273-A:3, II(b).

## I. *Legality of Binding Interest Arbitration*

The City seeks to have the practice of binding interest arbitration in the current contract declared void as an unlawful delegation to a non-public, non-elected outside arbitrator of authority to determine public expenditures, and because the contract lacks sufficient standards by which to measure the delegation. The Public Employee Labor Relations Act ("act") permits the parties, in the course of collective bargaining, to "provid[e] for such lawful procedures for resolving impasses as the parties may agree upon; provided that no such procedures shall bind the legislative body on matters regarding cost items." RSA 273-A:12, V.

The City first asserts that, in the implementation of dispute resolution procedures, no delegation of the duty to bargain is permitted to non-governmental arbitrators. The binding interest arbitration implemented by the Portsmouth contract refers impasse items to an independent single arbitrator selected by the parties either at large or from an American Arbitration Association list.

The value of binding arbitration in preventing public sector strikes has been recognized, *see City of Detroit v. Detroit Police Officers*, 408 Mich. 410, 436–37 n.4, 294 N.W.2d 68, 73 n.4 (1980), *appeal dismissed*, 450 U.S. 903 (1981); Howlett, *Interest Arbitration in the Public Sector*, 60 CHI.[-]KENT L. REV. 815, 829 (1984), and, often, practical considerations require that an arbitrator or board contain

non-public members. *See City of Richfield v. Local No. 1215, Etc.*, 276 N.W.2d 42, 48 (Minn. 1979). In fact, arbitrators serve to breed trust on both sides, enabling both sides to reach a mutually satisfactory result. Thus, agreeing to properly circumscribed binding arbitration is not necessarily abdicating the duty to set terms of contracts, but is merely one approach to carrying out the duty.

Delegations of governmental functions to private individuals are permitted so long as proper safeguards are provided. *See Corning Glass Works v. Ann & Hope, Inc. of Danvers*, 363 Mass. 409, 422, 294 N.E.2d 354, 362 (1973); *Medford Firefighters Ass'n v. City of Medford*, 595 P.2d 1268, 1272 (Or. App.), *review denied*, 287 Or. 507 (1979); *Milwaukee County v. Milwaukee Dist. Council 48*, 109 Wis. 2d 14, 24–25, 325 N.W.2d 350, 358 (1982). Therefore, the issue is not whether such delegation may occur, but rather whether sufficient safeguards against arbitrariness are provided. K. DAVIS, ADMINISTRATIVE LAW TREATISE 54 (Supp. 1970).

Various means of asserting such control are available. "Most statutes mandating arbitration establish some criteria for the arbitrators to follow in making their award." McAvoy, *Binding Arbitration of Contract Terms: A New Approach to the Resolution of Disputes in the Public Sectors*, 72 COLUM. L. REV. 1192, 1199–1200 (1972). Some jurisdictions choose to limit the award to the terms contained in one or the other of the parties' "final offers." *See, e.g.*, MICH. COMP. LAWS ANN. §§ 423.238 and 423.239 (West 1978); OHIO REV. CODE ANN. § 4117.14(D)(1) (Page 1991); ILL. REV. STAT. ch. 48, § 1614(h) (1990). Finally, residency requirements have occasionally been imposed on the arbitrators. *See, e.g.*, R.I. GEN. LAWS, § 28–9.1–8; MICH. COMP. LAWS ANN., § 423.235. In addition to providing standards and intelligible principles by which the arbitrator must conform, the delegation can be further safeguarded by establishing a procedure whereby the arbitrator's discretion can be effectively reviewed. *Cleveland Police v. City of Cleveland*, 24 Ohio App. 3d 16, 19, 492 N.E.2d 861, 865–66 (1985).

One of the greatest concerns to the issue of delegation is that the decision of the arbitrator may necessitate a public expenditure, thereby requiring an increase in taxes. *See Dearborn Fire Fight., Etc. v. City of Dearborn*, 394 Mich. 229, 245–46, 231 N.W.2d 226, 238 (1975). The danger exists that arbitration will be implemented simply because "a governmental official can avoid an unpleasant decision for which he would otherwise be politically accountable" by permitting public funds to be bound by the ruling of a non-govern-

mental entity. Comment, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector*, 68 MICH. L. REV. 260, 288 (1969); *see also State v. Johnson*, 46 Wash. 2d 114, 121, 278 P.2d 662, 666 (1955). We are not, however, confronted with such an unfettered delegation of authority.

▮ The arbitrator cannot bind the City on cost items. "[C]ost items *shall* be submitted to the legislative body of the public employer for approval." RSA 273-A:3, II(b) (emphasis added). In addition, RSA 273-A:12 prohibits any impasse resolution procedure the parties may agree upon from binding the legislative body on cost items. As such, the municipal body has final review of all items which will place demands upon public funds. This assuages the primary concern that the delegation wrests fiscal responsibility from the hands of those public officials charged with financial decision-making authority, and also removes the concern over the improper exercise of legislative power through arbitration. Such final review of an agency's decisions is sufficient to protect otherwise objectionable delegations. *Tremblay v. Berlin Police Union*, 108 N.H. 416, 421, 237 A.2d 668, 672 (1968); *see City of Cleveland*, 24 Ohio App. 3d at 18, 492 N.E.2d at 865.

▮ In addition, other limitations applicable to non-cost items are imposed by statute and limit the arbitrator's discretion. RSA 273-A:1, XI excludes "managerial policy" in collective bargaining negotiations, and RSA 273-A:3, III prohibits matters regarding merit systems from such talks. Furthermore, any negotiated items are subject to the regulations of the department of education. *See* RSA ch. 186 *et seq.*; RSA ch. 189 *et seq.*; RSA 194:23. Among these are the length of the school year, N.H. ADMIN. RULES, Ed 306.01; teacher certification standards, *id.* ch. 500; teaching load, *id.* 306.06; class size, *id.* 306.06; curriculum, *id.* 306.02; and conditions of employment, *id.* 309.03. Given these statutory and regulatory guidelines, we conclude that the ability of the arbitrator to bind the City is sufficiently restricted so as to alleviate any concern about undue delegation or violation of the law. As such, the trial court's ruling that binding interest arbitration applies to the current contract is correct.

## II. *Legality of Charter Amendment D*

Having thus held that binding interest arbitration is a valid, legal method of dispute resolution, we now turn to the question of whether such arbitration may be excluded from future municipal bargaining

agreements. The association contends that by adopting Amendment D, which prohibits the use of binding interest arbitration in collective bargaining agreements, the City has run afoul of RSA 273-A:12. Our inquiry here is two-fold: first, has the legislature by this statute restricted local adoption of alternative dispute mechanisms, and second, if it has not so restricted local action, has the legislature preempted the municipality's power to adopt such restrictions.

The first inquiry presents a question of legislative intent. "Local legislation is repugnant to State law when an ordinance or bylaw either expressly contradicts a statute or else runs counter to legislative intent underlying a statutory scheme." *State v. Driscoll*, 118 N.H. 222, 224, 385 A.2d 218, 220 (1978) (citations omitted). To determine the legislative intent, we must first look to the plain language of the act. *Appeal of Coastal Materials Corp.*, 130 N.H. 98, 101, 534 A.2d 398, 400 (1987). Reading the language of the statute, we can find no intent other than to *permit* other lawful impasse resolution methods. Quite simply, the language of paragraph V, which provides that "[n]othing in this chapter shall be construed to prohibit the parties from providing for such lawful procedures for resolving impasses . . . ," RSA 273-A:12, expresses the legislature's concern that its actions not limit lawful alternative dispute mechanisms. It is a far greater step, however, to read this language as mandating the availability of such mechanisms, and foreclosing all local regulation which may limit their availability. Although the language of RSA 273-A:12, V clearly allows alternative dispute resolution, such as binding interest arbitration, it does not clearly mandate it. Nor does the legislative history indicate that the legislature intended to foreclose all local regulation in the area. *Cf. Derry Sand & Gravel, Inc. v. Town of Londonderry*, 121 N.H. 501, 504, 431 A.2d 139, 141 (1981) (absent legislative intent or contradiction between local and State statute, local ordinance is valid). Therefore, we conclude that the legislature has not restricted local action, such as the City of Portsmouth's adoption of Amendment D.

The more probing inquiry is whether, by this act, the legislature has preempted local regulation on the subject by municipalities. The test is whether there is sufficient evidence that the legislature intended to make a uniform and comprehensive State mandate. *Driscoll, supra* at 225, 385 A.2d at 221; *see also Coastal Materials Corp.*, 130 N.H. at 105, 534 A.2d at 402. No such intent can be discerned from the language or history of RSA 273-A:12, V. Further-

more, the local legislation does not upset the statutory scheme. Although the State Legislature has chosen not to foreclose an option *for the parties*, nothing bars the voters of Portsmouth from decreeing, by charter amendment, that its subordinate body shall not employ a certain impasse resolution mechanism. Charter Amendment D does not affect the statutory labor relations elements expressly mandated in RSA chapter 273-A, nor is it repugnant to the statute. Accordingly, the local regulation, applied prospectively, is not preempted.

III. *Legality of Charter Amendment B*

The association next argues that Charter Amendment B, which provides that "[f]inal approval of any contract shall be by vote of the City Council," oversteps the limitation of RSA 273-A:3, II(b). This section states that "[o]nly cost items shall be submitted to the legislative body of the public employer for approval." *Id.* The association asserts that the plain language of this amendment, as well as the construction given to it by the city council, conflicts with the "cost item" provision of RSA 273-A:3, II(b).

■ Once again, we begin our examination of the legality of Charter Amendment B by referring to its plain language. *Coastal Materials Corp.*, 130 N.H. at 101, 534 A.2d at 399. If the amendment's language clearly and unambiguously conflicts with the statute, we will not engage in judicial construction to modify the amendment so as to make it consistent with the law. *Slovenski v. State*, 132 N.H. 18, 22, 561 A.2d 1072, 1075 (1989). When, however, the language is ambiguous, we will interpret ordinances in a logical manner, *Coastal Materials Corp.*, *supra* at 105, 534 A.2d at 402, and strive to avoid unlawful results.

■■ The disputed section of Amendment B grants the city council "final approval" authority on any contract. Prior to the amendment, the city council had no ability to directly assert its legitimate authority to review cost items in a practical and timely manner. The council had previously only retained power of approval for the overall budget of the school department. The primary purpose of Amendment B, then, was to mandate a procedure giving the city council a direct voice on labor agreements. As part of this procedure, the amendment provides that the city council shall vote to approve or disapprove of any collective bargaining agreements funded by the City. The amendment, however, does not expressly address on what

basis, or to what subject matter, the council has authority to withhold such final approval. Although the city council may review and give final approval to all municipal public employment contracts, this approval may only be withheld if based on cost items. RSA 273-A:3, II(b). The amendment, however, does not expressly give the city council the authorization to reject non-cost items. In the absence of an irreconcilable conflict we must presume that the council will act only within its authority to review those items permitted by the statute. Thus, facially the amendment does not necessarily overstep the limits of RSA chapter 273-A. *Cf. Bell v. Arel*, 123 N.H. 311, 315, 461 A.2d 108, 111 (1983) (proposed ordinance limitations directly counter to statute are invalid).

The association further argues that even if facially valid, Charter Amendment B has been applied in an illegal manner by the city council's review of non-cost items. According to the association, the city council's review of the duration of the contract was a review of a non-cost item. Therefore, the association argues, since the city council has been allowed to review a non-cost item pursuant to Amendment B, the amendment is repugnant to RSA 273-A:3, II(b) and is unconstitutional.

■■ ■■ The trial judge, however, has found, as a factual matter, that "the final approval referred to in Amendment B is concerned with 'bottom line' budget approval." In other words, the trial judge found that the duration of the contract *is* a cost item. Factual findings by the lower court are presumed valid "if the findings can reasonably be made on all the evidence . . . ." *Liberty Mutual Ins. Co. v. Custombilt, Inc.*, 128 N.H. 167, 170, 512 A.2d 1098, 1100 (1986). After reviewing the record, we find that a reasonable person could have come to the same conclusion as the trial court. *See id.* Therefore, we affirm the trial court's ruling that the duration of the contract, in this case, constituted a cost item.

■■ Since the review of contract duration properly has been found to be a review of a cost item, this application of Amendment B did not conflict with RSA 273-A:3, II(b). The assertion that the amendment is illegal is not ripe. *United Public Workers v. Mitchell*, 330 U.S. 75, 89–90 (1947). We cannot speculate that the council otherwise will interpret their power in an illegal way. *See Salem Coalition for Caution v. Town of Salem*, 121 N.H. 694, 696, 433 A.2d 1297, 1299 (1981). The association will suffer no injury by the submission of the contract to the council, provided only cost items are passed on by the

council. Without facts to support an assertion that the approval is being withheld based on non-cost items, we can find no conflict with RSA 273-A:3, II(b). In light of the state of the record and our holdings herein, we do not address the association's alternative argument that the City has circumvented the State statute via the "home rule" under the New Hampshire Constitution.

*Affirmed.*

All concurred.