Public Employee Labor Relations Board
No. 90-478

APPEAL OF FRANKLIN EDUCATION ASSOCIATION,
NEA–NEW HAMPSHIRE
(New Hampshire Public Employee Labor Relations Board)

November 10, 1992

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the petitioner, Franklin Education Association.

*Kidder & Lawson*, of Laconia (*Bradley F. Kidder* on the brief and orally), for the respondent, Franklin Board of Education.

JOHNSON, J.   The petitioner, the Franklin Education Association (the association), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) ordering the association and the respondent, the Franklin Board of Education (the school board) to return to the negotiating table. We hold that the school board violated its duty to negotiate in good faith with the exclusive representative of the association, *see* RSA 273-A:5, I(e), and therefore reverse and declare the teachers' June 1990 contracts invalid. We also hold that the Franklin City Council (the council) did not impliedly ratify the parties' collective bargaining agreement (the CBA). Accordingly, we hold the April 1990 teacher contracts to be likewise invalid.

We relate only those facts, and address only those arguments, relevant to the dispositive issues of implied ratification and bad faith negotiation. The school board and the association began negotiating in the fall of 1989 for a CBA to cover the 1989–92 school years. They reached a preliminary agreement in January 1990, establishing wage increases of 4.3, 16.67, and 13.8 percent, respectively, for the three years of the agreement. A final agreement was signed in March 1990, and the school board decided to fund the first year salary increases out of money the council had appropriated for the school board's use several months earlier, in September 1989. On April 6, 1990, the school board issued contracts to its teachers reflecting the wage levels agreed upon by the parties and memorialized in the CBA. A month later, the school board submitted the CBA to the council for approval of the contract's cost items, pursuant to RSA 273-A:3, II, but the council rejected the cost items on May 10, 1990.

On June 1, 1990, the school superintendent received a letter from the city solicitor advising that the council would finalize its 1990–91 budget on June 4, 1990, a Monday. The solicitor suggested that the school board reopen negotiations with the association, and stated:

> "If the School Board is desirous of taking any action which will have a potential impact on the Council's decision, then that action must be taken before the budget is set. It would not be wise for the School Board to assume that favorable action may be taken at a later date as State law requires a greater majority for a supplemental budget appropriation than that necessary to set the budget coming up on June 4th."

In response, the school board met in emergency session on Saturday, June 2, 1990, and voted to rescind the April contracts, issue new ones, and request the association to renegotiate. The new contracts had been prepared the previous day (the day the superintendent received the city solicitor's letter) and reflected salaries lower than those agreed to in the CBA. On Monday, June 4, 1990, the school board negotiator notified the association negotiator of these actions. The teachers received their new contracts the same day. The association filed an unfair labor practice charge with the PELRB, but the PELRB dismissed the charge and ordered the parties to return to the negotiating table. The association brought this appeal.

The association argues that the council impliedly ratified the parties' CBA, thus binding the school board to the April 1990 contracts based on the CBA. The association avers that the council knew of cost items contained in the CBA as early as January 1990, and knew that the school board was funding the contract's first year cost items out of money that the council had appropriated to the school board. Under *Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 579 A.2d 282 (1990), the association contends, implied ratification of the CBA's first year cost items constitutes ratification of the CBA's second and third year cost items.

The association's argument misses a central component of the *Sanborn* holding: the legislative body of a municipality (in this case, the council) is bound by a multi-year contract only if it knew about the cost items for *each* year of the CBA at the time it voted to appropriate money for the contract's *first* year. *Id.* at 522, 579 A.2d at 287. Here, the council did appropriate money that was eventually used by the school board to fund the cost items of the CBA's first year. There is no evidence, however, that the council knew of those cost items—let alone the cost items for the second and third years of the CBA—in September 1989 when it approved the appropriation; the parties did not reach even a tentative agreement until January 1990. We therefore hold that the council did not impliedly ratify the CBA's cost items. As the council explicitly rejected those cost items in May 1990, the April 1990 teachers' contracts, contingent upon the items' approval, are not binding. *See* RSA 273-A:3, II(b); *Sanborn*, 133 N.H. at 520, 579 A.2d at 285–86.

The association next argues that the school board violated its duty to negotiate in good faith with the association's exclusive representative. The school board counters that it fulfilled its statutory and contractual obligations by notifying the association negotiator on June

4, 1990, of its intent to renegotiate. We agree with the association that the school board's "direct dealing" with the teachers violated its duty to bargain in good faith.

The relevant statutory and contractual provisions are as follows. RSA 273-A:5, I(e) states that "[i]t shall be a prohibited practice for any public employer . . . [t]o refuse to negotiate in good faith with the exclusive representative of a bargaining unit . . . ." RSA 273-A:3, I, provides in part that

> "[i]t is the obligation of the public employer and the employee organization certified by the board as the exclusive representative of the bargaining unit to negotiate in good faith. 'Good faith' negotiation involves meeting at reasonable times and places in an effort to reach agreement on the terms of employment . . . ."

"Terms of employment" is defined in RSA 273-A:1, XI in part as "wages, hours and other conditions of employment." Finally, section 4.13 of the parties' March 1990 CBA reads:

> "4.13 If the monies to fund the economic provisions [of the CBA] are not appropriated [by the council] . . . , then the parties shall do the following:
> A. The appropriate party shall notify the other party of its intent to renegotiate the provisions of the Agreement; and
> B. The parties shall, within ten (10) days of such notification, meet and develop a modified settlement, which shall be resubmitted to the legislative entity (Franklin City Council) in accordance with the provisions of RSA 273-A-12, Paragraphs III and IV."

Together, RSA 273-A:1, XI; :3, I; and :5, I(e) compel the school board to negotiate wages in good faith with the association's exclusive representative. *See Appeal of White Mts. Regional School Bd.*, 125 N.H. 790, 796, 485 A.2d 1042, 1047 (1984). We interpret this requirement to mean that the school board must not only negotiate with the association's exclusive representative, but also refrain from negotiating with anyone other than the association's exclusive representative. Dealing directly with employees is generally forbidden, *cf.* 2 LAB. L. REP. (CCH) ¶ 3147 (1987) (analyzing 29 U.S.C.A. § 158(a)(5), which is similar to RSA 273-A:5, I(e)), because it seriously compromises the negotiating process and frustrates the purpose of the statutes quoted above. *Cf. Electric Machinery Co. v.*

*N.L.R.B.*, 653 F.2d 958, 962 (5th Cir. 1981) (employer has duty under 29 U.S.C.A. § 158(a)(5) to give negotiations a fair chance to succeed and must consult and negotiate with union before unilaterally changing terms of employment); 2 LAB. L. REP. (CCH) ¶ 3147 (1987) (analyzing 29 U.S.C.A. § 158(a)(5)). If an employer can negotiate directly with its employees, then the statute's purpose of requiring collective bargaining is thwarted.

The facts of this case illustrate the point. On June 4, 1990, the school board notified the association of its intent to renegotiate the terms of the CBA. Assuming, without deciding, that section 4.13 of the CBA, quoted above, applies to this controversy, then the association was obligated to meet with the school board and "develop a modified settlement" before June 14, 1990. The CBA does not, however, impose any penalty on the association in the event that the parties fail to reach a "modified settlement" within the allotted ten days. Moreover, RSA 273-A:3, I, states that "the obligation to negotiate in good faith shall not compel either party to agree to a proposal or to make a concession." Accordingly, the school board's notice to the association of its intent to renegotiate did not constrain the association to accept by a date certain whatever terms the school board proposed.

Meanwhile, on the same day the school board notified the association of its intent to renegotiate, the teachers in Franklin received new contracts prepared by the school board without consulting the association. The contracts offered wages lower than those agreed to in the March 1990 CBA and contained the following language:

> "This document is an offer by the Franklin School Board to contract for your professional services. *Sign both copies and return them to your Principal on/or before 4:00 p.m., Friday, June 15, 1990.* No changes, additions, and/or reservations will be permitted.
>
> When the Franklin Education Association and the Franklin Board of Education reach a negotiated settlement, your contract will be amended to reflect any appropriate changes.
>
> Note that if the contract is not signed and returned by the specified time and date, it will become null and void. You will have voluntarily relinquished all rights to the position offered."

These contracts indicated that the teachers could not refuse to sign without risking their jobs. Moreover, the teachers were given only eleven days to accept the school board's offer. As explained above,

the school board could not compel the association to capitulate to any terms, despite the "deadline" imposed by section 4.13 of the CBA, *see* RSA 273-A:3, I, and thus the teachers could have been coerced into accepting the school board's offer of lower wages before the association had negotiated a new agreement.

Although the new contracts stated that their terms would be modified in accordance with any subsequent agreement reached by the school board and the association, the association was left at a significant disadvantage. The new contracts, once signed, bound the teachers to the terms set by the school board until a new CBA was negotiated, thus giving the school board little incentive to agree to higher wages and instead encouraging it to prolong the negotiation process. The school board's actions unlawfully shifted the balance of power guaranteed by RSA chapter 273-A in favor of the school board.

We hold that the school board's "direct dealing" with the teachers violated its duty to bargain in good faith with the association, *see* RSA 273-A:1, XI; :3, I; :5, I(e), and therefore declare the June 1990 teachers' contracts, the product of the school board's unlawful "direct dealing," invalid. We reverse the PELRB's order and remand for appropriate remedies pursuant to RSA 273-A:6, VI.

*Reversed and remanded.*

All concurred.