Public Employee Labor Relations Board
No. 92-212

## Appeal of Milton School District
### (New Hampshire Public Employee Labor Relations Board)

May 20, 1993

*Kidder & Lawson,* of Laconia (*Bradley F. Kidder* on the brief and orally), for the petitioner, Milton School District.

*James F. Allmendinger,* of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, Milton Education Association.

JOHNSON, J. The petitioner, Milton School District (district), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) ordering the district to pay members of the respondent, Milton Education Association (association), certain salary benefits. The main issue on appeal is whether, for purposes of maintaining the status quo after a collective bargaining agreement (CBA) has expired but before a new one has been reached, a school district must increase the salaries of its educators at the start of the new school year in accordance with salary schedules contained in the expired CBA. We hold that a school district is not required to pay such "step increases" under these circumstances. Questions subsidiary to this issue are whether an "automatic renewal" clause is a cost item and whether approval of the Town of Milton's legislative body (town) is necessary to make such a clause enforceable. We answer these questions in the affirmative and, therefore, reverse the PELRB's decision regarding the step increases. The district also asks whether, to maintain the status quo, it must comply with a provision of the expired CBA regarding lunch supervision duties even though the provision was never approved by the town. We hold that it

must and therefore affirm the PELRB's decision regarding these supervision duties.

We first address the issues of the step increases and the automatic renewal clause and relate the facts necessary to resolve them. In early 1989, the district and the association signed a CBA, effective from September 1, 1989, until August 31, 1991. Salaries under the CBA were specified in a schedule according to levels of training and experience. Each year of an educator's experience was equivalent to one "step" in the salary schedule; consequently, a salary increase paid because of an educator's additional year of experience was known as a step increase. In October 1990, the district and the association signed an amendment to the CBA, which stated, "This agreement shall automatically renew itself for successive terms of one year or until a successor agreement has been ratified." This duration amendment was never submitted to or approved by the town.

By the time the CBA expired in August 1991, no new CBA had been signed, and the district eventually began paying the members of the association at their 1990–91 salary levels. The association complained to the PELRB, asserting that while collective bargaining for a new contract was still in progress, the district should pay the educators according to the 1990–91 salary schedule, and not simply the 1990–91 salaries. In other words, the association argued that the district must include step increases in the educators' 1991–92 salaries.

The PELRB agreed. In arriving at its conclusion, the PELRB focused on the CBA duration amendment, ruling preliminarily that, as the amendment was supported by adequate consideration, it was enforceable. The PELRB then stated:

> "Turning to the language of the [amendment], we find that it provides for automatic renewal 'for successive terms of one year or until a successor agreement has been ratified.' This means to us that the parties intended all the provisions of the CBA to remain in full force and effect for successive terms of one year or until replaced by a later agreement. The language of the [amendment] is clearly an 'automatic renewal' or 'evergreen' clause such as has been considered by this Board in the past. For example, in *Interlakes Teachers* (Decision No. 86-52, August 7, 1986), we said, 'The existing contract did not contain an automatic renewal clause which would have given everyone an automatic "step increase."['] This case is the converse of that, suggesting that the existence of the automatic renewal clause would be grounds for the step increases. This reasoning is also con-

sistent with our decision in *Newfound Area Teachers Association* (Decision No. 91-109, December 16, 1991) *after* the *Sanborn* decision (133 N.H. 513, [579 A.2d 282] August 14, 1990) where we again noted that 'the existing agreement did not contain an automatic renewal clause which would have given all of the teachers an automatic "step raise."['] Thus, our analysis, both before and after *Sanborn*, leads us to conclude that there is entitlement to step increases under the facts of the instant case."

The PELRB did not specifically address the question whether the "automatic renewal" clause was a cost item requiring the approval of the town.

On appeal, the district argues that (1) the automatic renewal clause was a cost item; (2) as a cost item, the automatic renewal clause was unenforceable because it was never approved by the town; and (3) in the absence of an enforceable automatic renewal clause, the district was not required to pay step increases during collective bargaining once the previous year's CBA had expired. We agree.

■ First, we hold that the automatic renewal clause was a cost item. RSA 273-A:1, IV (1987) defines cost item as "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." An automatic renewal clause fits squarely within this definition. Such a clause continues the previous year's CBA until a new agreement is reached and therefore is, in essence, a multi-year contract with no termination date. As each year's contract obviously contains cost items, the automatic renewal clause must be classified as a cost item.

The association cautions us to accord deference to the ruling of the PELRB below, *see Appeal of State Employees' Ass'n*, 120 N.H. 690, 694, 422 A.2d 1301, 1304 (1980) ("the legislature has vested the PELRB with authority initially to define the terms of the collective bargaining statute . . . [and] in the absence of an error of law, [this court] will not overturn a ruling of the PELRB unless we find that the board abused its discretion" (citations omitted)), but as the PELRB made no ruling on this particular question, there is no ruling to which we can defer. Moreover, in another recent case, the superior court found that the duration of a contract was in fact a cost item, and this court upheld the finding as reasonable under the circumstances of that case. *City of Portsmouth v. Assoc. of Portsmouth*

*Teachers,* 134 N.H. 642, 650, 597 A.2d 1063, 1068 (1991). Based on the plain wording of RSA 273-A:1, IV, and our holding in *City of Portsmouth,* we conclude that the PELRB here erred as a matter of law in not ruling that the automatic renewal clause is a cost item.

██ Next, we hold that the automatic renewal clause was unenforceable because the town never approved it. RSA 273-A:3, II(b) (1987), concerning the submission of cost items, states:

"Only cost items shall be submitted to the legislative body of the public employer for approval. If the legislative body rejects any part of the submission, or while accepting the submission takes any action which would result in a modification of the terms of the cost item submitted to it, either party may reopen negotiations on all or part of the entire agreement."

We recently interpreted this statute, declaring that it "in essence divests the school [district] of its authority to bind the town to future appropriations without action by the school district voters." *Appeal of Sanborn Regional School Bd.,* 133 N.H. 513, 520, 579 A.2d 282, 285 (1990). Because the town never approved the automatic renewal clause, the district could not bind the town to the future appropriations contained within the clause. *Id.*

 Although our decision in *Sanborn* makes it plain that the *town* is not bound by the automatic renewal clause, neither *Sanborn* nor RSA 273-A:3, II(b) explicitly answers the question whether the district and the association, the parties to the contract, are bound. Under RSA 273-A:3, II(b), neither party may enforce a CBA if the legislative body rejects the cost items in it, *see Appeal of Franklin Education Assoc.,* 136 N.H. 332, 334, 616 A.2d 919, 920–21 (1992) (legislative body rejected cost items contained in contracts; the contracts, "contingent upon the items' approval, are not binding"), but the statute does not specifically address the situation before us, where the cost items were never submitted to the town in the first place. We conclude, however, that the two situations are functionally equivalent. It would elevate form over substance to make a distinction here between the town specifically rejecting a cost item and the town simply never approving the item. Either way, the town has not approved the cost item, and either way, a binding, but unfunded CBA could prove injurious to the school system as a whole. Accordingly, we determine that the district was not bound by the automatic renewal clause. Given our interpretation of RSA 273-A:3, II(b), the as-

sociation's arguments regarding consideration and general contract law are irrelevant.

■ Next, we address whether, in the absence of an enforceable automatic renewal clause, the district was required to pay step increases during collective bargaining after the previous CBA had expired. We hold that it was not. To resolve this issue, we need look no further than the PELRB's order which we repeat for purposes of clarity:

"The language of the [amendment] is clearly an 'automatic renewal' or 'evergreen' clause such as has been considered by this Board in the past. For example, in *Interlakes Teachers* (Decision No. 86-52, August 7, 1986), we said, 'The existing contract did not contain an automatic renewal clause which would have given everyone an automatic "step increase."['] This case is the converse of that, suggesting that the existence of the automatic renewal clause would be grounds for the step increases. This reasoning is also consistent with our decision in *Newfound Area Teachers Association* (Decision No. 91-109, December 16, 1991) *after* the *Sanborn* decision (133 N.H. 513, [579 A.2d 282] August 14, 1990) where we again noted that 'the existing agreement did not contain an automatic renewal clause which would have given all of the teachers an automatic "step raise." [']"

Had the PELRB found the automatic renewal clause unenforceable as an unapproved cost item, it likely would not have ordered the district to pay the step increases.

■ As both the district and the association agree, maintaining the status quo during collective bargaining after a previous CBA has expired is essential to preserving "the balance of power guaranteed by RSA chapter 273-A." *Franklin Education Assoc.*, 136 N.H. at 337, 616 A.2d at 922. Contrary to the association's arguments, however, the PELRB has consistently defined "status quo" to include the past year's salary levels, not the past year's CBA and any salary schedules contained within it. *See Fall Mountain Teachers Association/NEA-NH v. Fall Mountain Regional School Board*, Decision No. 92-56 (PELRB Apr. 22, 1992); *Newfound Area Teachers Association, NEA-NH/NEA v. Newfound School Board*, Decision No. 91-109 (PELRB Dec. 16, 1991); *AFSCME, Local 3657, Hudson Police v. Town of Hudson, New Hampshire*, Decision No. 91-81 (PELRB Oct. 4, 1991); *Interlakes Education Association/NEA-NH*

*v. Interlakes School Board,* Decision No. 86-52 (PELRB Aug. 7, 1986). This is enough for us to conclude that the PELRB should not have ordered the district to pay step increases here. "We have held that where a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." *Hamby v. Adams,* 117 N.H. 606, 609, 376 A.2d 519, 521 (1977). It appears that the PELRB's deviation here from past rulings was entirely based on its mistaken assumption that the automatic renewal or "evergreen" clause was enforceable.

The association's citation to *Rochester School Board v. Public Employee Labor Relations Board,* 119 N.H. 45, 53, 398 A.2d 823, 829 (1979), is inapposite. There, unlike here, a two-year CBA remained in effect during the collective bargaining period, and the contract provided that salaries could be changed through collective bargaining for the second year of the contract. *Id.* The only issue was whether the contract's salary schedule applied to both years of the contract if the parties failed to reach a new agreement for the second year. This court's holding that the schedule was still operative under those circumstances, *id.,* has no bearing on the issue here.

The association next argues that a majority of other States confronted with this issue has resolved it in favor of granting step increases and that, therefore, we should, too. It appears, however, that most of these decisions were either mandated by statute, *see Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Assn.,* 78 N.J. 25, 51, 393 A.2d 218, 231–32 (1978); *Cobleskill Cent. Sch. Dist. v. Newman,* 105 A.D.2d 564, 565, 481 N.Y.S.2d 795, 796 (1984), *appeal denied,* 64 N.Y.2d 1071, 479 N.E.2d 248, 489 N.Y.S.2d 903, *appeal dismissed in part and denied in part,* 64 N.Y.2d 610, 479 N.E.2d 253, 489 N.Y.S.2d 1027 (1985), or depended in part upon a definition of "status quo" quite different from the one adopted by the PELRB.

█ We recognize that "the denial of the right to strike has the effect of heavily weighing the collective bargaining process in favor of the government," *Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n,* 114 N.H. 245, 249, 317 A.2d 555, 557 (1974), and that we must therefore take care to protect the rights of public employees. We do not, however, see any abuse of the district's power in this case, and instead note the possibility of the balance improperly shifting towards the association should the PELRB's ruling below be upheld. Based on the consistent and reasonable interpretation of the PELRB on this issue, *see Hamby v. Adams,* 117

N.H. at 609, 376 A.2d at 521, we conclude that the district should not be required to pay step increases after a CBA has expired and during the pendency of collective bargaining for a new CBA.

We now turn to the question of the lunch supervision duties. The expired CBA contained the following provision: "[Teachers'] duties do not include the supervision of students. . . . Teachers who wish to may fill lunch duties and be compensated at the rate of $10 per duty. . . . Teachers will not have supervisory duties beginning with the 1990–91 school year." The PELRB found that the district forced association teachers to perform these lunch duties without pay during the 1991–92 school year, contrary to the provisions of the expired CBA. The district does not contest this finding, but disagrees with the PELRB's conclusion that the district was required to abide by the expired CBA provision. The district argues that the provision was unenforceable because, like the step increases, it was a cost item never approved by the town. The association responds that (1) the provision was not a cost item; (2) if it were a cost item, town approval was unnecessary to make it enforceable; and (3) if town approval were required, the district may not assert this argument on appeal because it failed to complain about lack of town approval within the six months allowed by RSA 273-A:6, VII (Supp. 1992).

We agree with the association that the provision of the expired CBA guaranteeing teachers relief from mandatory lunch supervisory duties was not a cost item because, by itself, it was not a "benefit . . . requir[ing] an appropriation by the legislative body of the public employer." RSA 273-A:1, IV. RSA 273-A:3, II(b) provides that "[o]nly cost items shall be submitted to the legislative body of the public employer for approval." Accordingly, town approval was not required to make this contract provision binding on the district; the district representative's signature to the CBA sufficed.

 As explained above, the principle of maintaining the status quo demands that all terms and conditions of employment remain the same during collective bargaining after a CBA has expired. This does not mean that the expired CBA continues in effect; rather, it means that the conditions under which the teachers worked endure throughout the collective bargaining process. The provision relieving the teachers from mandatory lunch supervisory duties was plainly a condition under which the teachers worked. We therefore uphold the PELRB's ruling forbidding the district from forcing the teachers to perform the lunch supervisory duties during this collective bargaining period. We do not need to address whether the district was obligated to abide by its promise to pay the teachers ten dollars per

lunch duty voluntarily performed during the collective bargaining period. Teachers compelled to perform supervisory lunch duties during this period were illegally forced to work contrary to the requirement of maintaining the status quo. This violation must be remedied, regardless of the enforceability of the ten dollar per lunch duty provision. An obvious remedy is reimbursing these teachers by a reasonable amount on a quantum meruit basis. As the parties had recently agreed upon ten dollars per duty as a reasonable compensation, we find no error in the PELRB's decision requiring the district to reimburse teachers at this rate for those supervisory lunch duties.

*Reversed in part; affirmed in part.*

BROCK, C.J., and BATCHELDER, J., dissented; the others concurred.

BROCK, C.J., and BATCHELDER, J., dissenting: The public employee labor relations board (PELRB) is invested by the legislature with authority to define the terms of the chapter that created it, RSA chapter 273-A (1987). *Appeal of AFL-CIO Local 298*, 121 N.H. 944, 947, 437 A.2d 260, 262 (1981). The PELRB was created as a means "to foster harmonious and cooperative relations between public employers and their employees and to protect the public by encouraging the orderly and uninterrupted operation of government." RSA ch. 273-A, statement of policy. Its findings, upon all allegations of fact, in collective bargaining matters "are deemed prima facie lawful and reasonable," *Appeal of Town of Pelham*, 124 N.H. 131, 135, 469 A.2d 1295, 1297 (1983), and its rulings may be reversed only upon a finding that in a given matter it has acted unjustly or unreasonably or has clearly abused its discretion, *Appeal of AFL-CIO Local 298*, 121 N.H. at 947, 437 A.2d at 262. The PELRB's findings and rulings in this case fall far short of crossing any of these lines, and its decision should be upheld.

The Milton School Board (the board) and the Milton Education Association (the association) entered into a collective bargaining agreement (CBA), covering the period September 1, 1989, through August 31, 1991. The CBA, which was approved by the voters, included a salary schedule containing "steps" or yearly increments as well as provisions for medical and dental benefits. During the second year of the CBA, the board and the association began negotiations for a successor agreement. The parties agree that they understood that the terms and conditions of the then-current CBA would remain in effect until a new agreement was reached. Nevertheless, the board proposed that an addendum be added to the CBA, stating, "This

agreement shall automatically renew itself for successive terms of one year or until a successor agreement has been ratified." Article XIX, 1989-91 CBA. The addendum, although in our view surplusage, was drafted and signed by the association and the board on October 31, 1990.

The majority hinges its opinion on its decision that this automatic renewal or "evergreen" clause is a cost item and, as such, was required to be specifically adopted by the district's legislative body (the school district voters) to be valid and enforceable. *See* RSA 273-A:3; RSA 273-A:1, IV; *Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 520, 579 A.2d 282, 285 (1990). This plainly and simply is not the case. A cost item is defined as "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." RSA 273-A:1, IV. This court has previously held that RSA 273-A:3, IV requires the school district to receive approval of the district voters to bind the town to future cost items, as contained in multi-year contracts. *See Appeal of Sanborn Regional School Bd.*, 133 N.H. at 520, 579 A.2d at 285. The majority determines that because "each year's contract obviously contains cost items, the automatic renewal clause must be classified as a cost item." It then concludes that because this cost item was not submitted to the voters, the step increase provision within the CBA is not enforceable. We take issue with the majority's approach on several levels.

First, the majority's approach creates an inescapable inconsistency in its holding. In ruling that the "evergreen" clause constitutes a cost item, the majority holds that the PELRB erroneously granted step increases during the time in question. Yet, the majority holds that it was appropriate for the PELRB to afford automatic renewal protections to other provisions of the CBA, including the provisions for base salaries, health benefits, dental benefits, and lunch duty remuneration. Under the majority's reasoning, these items also should have been considered cost items that were not approved by the voters and, thus, should not continue absent a new contract. The logical extension of this approach would lead to the result that absent a contract, teachers have no legal entitlement to benefits for their work.

Such reasoning also highlights the approach to the issue involving compensation for lunch supervision duties. The expired CBA provided that teachers' duties did not include lunch supervision, but if the teachers wished to supervise lunches, they would be compen-

sated. The PELRB found that the district required association teachers to perform such lunch duties without pay during the 1991–92 school year, contrary to the provisions of the CBA, and ordered the district to pay the teachers the rate guaranteed under the expired CBA. The majority found that the relief from lunch supervisory duties was not a cost item, because it did not require an appropriation, yet held that the district should compensate, under a quantum meruit theory, those teachers who were required to perform such lunch duties. Is this not a cost item?

Second, the majority concludes that the step increases were not approved by the voters because the "evergreen" clause was not approved by the voters. The step increases, as well as all of the other terms and conditions of the expired CBA, originally had been approved by the voters when the contract was accepted. *See Appeal of Sanborn Regional School Bd.*, 133 N.H. at 520, 579 A.2d at 285.

The "evergreen" clause reduces to writing what was understood and accepted by both the board and the association. It is surplusage, and its excision from the CBA has no impact on continuation of the contract provisions. The "evergreen" clause merely highlights the well-settled principle that the status quo must be maintained while contract negotiations for public employees, who have no right to strike, are underway. We agree with the majority that the status quo must be maintained when contract negotiations for such employees are ongoing. Our differences center on the definition of status quo. Essentially, the majority concludes that the status quo can be maintained by continuing the actual dollar amount paid under the terms of the existing contract, and continuing any other conditions and benefits of employment that it feels should be continued. We believe, on the other hand, that in order to maintain the status quo, *all* terms and conditions of employment set forth in the previous agreement must be maintained.

In concluding as it does, the majority disregards the overwhelming weight of authority, including *NLRB v. Katz*, 369 U.S. 736, 746–47 (1962), the landmark decision of the United States Supreme Court in private sector labor law, relied upon in many States in the development of their own public sector labor jurisprudence, whether in labor relation boards or appellate courts, and setting the tone for cases such as this. *See General Motors Acceptance Corporation v. NLRB*, 476 F.2d 850, 854 (1st Cir. 1973); *City of Ocala v. Marion Cty. Police Benev.*, 392 So.2d 26, 28–30 (Fla. Dist. Ct. App. 1980); *Vienna Sch. Dist. v. Ill. Ed. Labor Rel. Bd.*, 162 Ill. App. 3d 503, 506–07, 515 N.E.2d 476, 478–80 (1987); *Indiana Educ. Employment v. Mill*

*Creek Teachers*, 456 N.E.2d 709, 712 (Ind. 1983); *Cobleskill Cent. Sch. Dist. v. Newman*, 105 A.D.2d 564, 565, 481 N.Y.S.2d 795, 796 (1984); *Bays v. Shenango*, 53 Ohio St. 3d 132, 135, 559 N.E.2d 740, 743 (1990); *Burlington Fire Fighters Ass'n v. Burlington*, 142 Vt. 434, 436, 457 A.2d 642, 643 (1983). In the public sector, when a CBA has expired and negotiations for a successor agreement are ongoing, the parties must maintain the status quo, *i.e.*, the terms and conditions of employment set forth in the previous agreement survive until the parties negotiate a change.

The prevailing view that the status quo must be maintained when a CBA expires and negotiations are ongoing is conceded in the district's brief — "the 'old' terms and conditions of employment continue *after expiration* of a CBA until there is a mutual agreement to change." In addition, maintenance of the status quo is mandated in our own PELRB decisions, *see Sugar River Education Association, NEA-NH v. Claremont School Board*, PELRB Decision No. 86-25 (1986); *AFSCME, Local 3657, Hudson Police v. Town of Hudson*, PELRB Decision No. 91–81 (1991), as well as in those of our neighboring states, *Maine State Employees Ass'n v. City of Lewiston and School Comm.*, Case Nos. 92-17 & 18 (1992); *Readsboro Chapter v. Readsboro Bd. of School Directors*, 15 V.L.R.B. 268 (1992); *Chester Educ. Ass'n v. Chester-Andover School Bd. of Directors*, 1 V.L.R.B. 426 (1978).

The lone issue to be determined is whether the step increase provision in this case is a term and condition of employment and, as such, is a part of the status quo. The relevant question of fact, then, is whether the teachers had reasonable expectations from the express provisions of the expired agreement, relevant bargaining history, and past practice that they would receive the annual step increments. *See Vienna Sch. Dist. v. Ill. Ed. Labor Rel. Bd.*, 162 Ill. App. 3d at 505–06, 515 N.E.2d at 478. The PELRB found that based on the history of the teachers' negotiations with the board, in this case, and "consistent with past practice and understanding," the teachers reasonably expected these step increases. It concluded, therefore, that it was a violation of fair labor practices for the board not to continue the salary step increases. The PELRB's factual determination that the step increases were part of the status quo is *prima facie* lawful and reasonable and, thus, should be upheld. *See Appeal of Town of Pelham*, 124 N.H. at 135, 469 A.2d at 1297. Moreover, the PELRB decision is supported by the weight of authority. *See, e.g., City of Ocala v. Marion Cty. Police Benev.*, 392 So. 2d at 27; *Vienna Sch. Dist. v. Ill. Ed. Labor Rel. Bd.*, 162 Ill. App. 3d at 508, 515 N.E.2d at

480; *Indiana Educ. Employment v. Mill Creek Teachers*, 456 N.E.2d at 713; *Bays v. Shenango*, 53 Ohio St. 3d at 135, 559 N.E.2d at 743; *Cobleskill Cent. Sch. Dist. v. Newman*, 105 A.D. 2d at 565, 481 N.Y.S.2d at 796.

The majority assumes that the step increase provision will necessarily cost the district more money. The step increase, however, is nothing more than a matrix upon which the salaries of those teachers who stay in the system are ratcheted up to a higher step based upon years of service. The *cost* effect of the step increase, of course, cannot be determined until all teacher contracts are signed for the following year. As teachers leave the system by retirement or transfer to other school districts, their salary slots presumably will give way to new personnel coming in at the entry level. Whether such transition or turnover results in a greater or lesser expenditure than the previous year was an unknown factor at the time of the "evergreen" clause's adoption.

Apparently in the face of ever rising real estate taxes, on January 4, 1991, the town budget committee cut approximately $354,750 from the proposed school board budget. Two months later, at the March 2, 1991, annual school district meeting, the voters cut an additional $259,134 from the budget committee recommended budget. The board's attempts to comply with the district's decreased school funding were varied and, in some instances, ill-advised. It cut salaries ten percent across the board, abolished dental plans for employees, and substantially reduced health benefits. In addition, it gouged all funding for athletic programs, reduced equipment replacement and grounds maintenance costs, and authorized the use of recapped tires on school buses. The final illustration of the school district's desperation was a request addressed to the State Board of Education seeking permission to close school two weeks early as a cost saving measure. The school district's position was articulated at the commencement of the PELRB hearing when counsel stated, "The School Board finds itself in the position where [*sic*] to obey the contract or obey the mandate of the people."

The board's failure to grant the step increase as a cost-cutting measure was improper. "[W]henever the employer by promises or by a course of conduct has made a particular benefit part of the established wage or compensation system, then he is not at liberty unilaterally to change this benefit either for better or worse during . . . the period of collective bargaining." *NLRB v. Dothan Eagle, Inc.*, 434 F.2d 93, 98 (5th Cir. 1970).

The PELRB ruled that "[t]he employer violated the collective bargaining agreement and the provisions of RSA 273-A:5 (I)(h) when it

failed to include step increases in teacher compensation (to the extent eligibility would have permitted) for the 1991–92 school year." The order of the PELRB must stand unless we determine that it is "clearly unreasonable or unlawful." RSA 541:13 (1974). The standard is neither diminished nor diluted even if we were sitting as the PELRB and would have ruled differently. *See Appeal of Town of Pelham*, 124 N.H. at 135, 469 A.2d at 1297. We do not review the evidence before the board *de novo*. Rather, we accept its factual findings unless they are clearly erroneous. *Appeal of AFL-CIO Local 298*, 121 N.H. at 947, 437 A.2d at 262. Against this high burden stands the rationale for the PELRB's very existence and statutory assignment; *i.e.*, its responsibility for articulating, in the first instance, a coherent body of collective bargaining law to govern public employment. *School Dist. #42 v. Murray*, 128 N.H. 417, 419, 514 A.2d 1269, 1271 (1986).

The majority highlights a background of PELRB decisions that have treated step increases differently in different cases. In this case, on these facts, the PELRB determined that the association was entitled to the benefits of step increases. For this court to overturn the board on this issue is to substitute our judgment for that of the board, and that plainly is not our function in these situations. *See Appeal of Town of Pelham*, 124 N.H. at 135, 469 A.2d at 1297.

Finally, we note that this is not a case about "evergreen" clauses or a case about step increases. It is a case about terms and conditions of employment during contract negotiations and when contract negotiations have stalled. The status quo must be maintained, and the majority fails to do so. For the reasons stated, we dissent.