Public Employee Labor Relations Board
No. 92-380

APPEAL OF CITY OF FRANKLIN
(New Hampshire Public Employee Labor Relations Board)

November 30, 1993

724

*Fitzgerald & Sessler P.A.*, of Laconia (*Paul T. Fitzgerald* on the brief and orally), for the City of Franklin.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the Franklin Education Association.

*Kidder & Lawson*, of Laconia (*Bradley F. Kidder* on the brief and orally), for the Franklin School District.

JOHNSON, J. The issue in this case is whether certain monetary provisions of a collective bargaining agreement (CBA) between the Franklin School District (school district) and the Franklin Education Association (association) are "cost items," as defined by RSA 273-A:1, IV (1987), and thereby subject to the requirement of RSA 273-A:3, II(b) (1987) that all "cost items" be submitted for approval to the public employer's legislative body, which in this case is the Franklin City Council (city council). The public employee labor relations board (PELRB) ruled that the provisions are not "cost items"—and therefore should not have been submitted to the city council for approval—because the city council had already appropriated for the school district's use sufficient funds to finance these provisions. The City of Franklin (city) appeals this ruling, and we reverse.

In June 1991, several months before the association and the school district were to sign their 1991–92 CBA, the city council approved the school district's proposed budget for the 1991–92 school year and appropriated the money necessary to fund it. The school district set aside $66,235.97 of this money to pay for the salary increases of any forthcoming CBA. By the time the 1991–92 school year began, however, several veteran teachers had left the school district and been replaced by less experienced teachers. It became apparent that the school district would not need the entire amount appropriated for its use that year and that a $66,235.97 CBA would in fact leave the school district with a budget surplus of $67,811. The school district and the association ratified a CBA containing monetary provisions for salary increases and related costs of $133,046.97, the sum of the expected budget surplus ($67,811) plus the $66,235.97 previously set aside by the school district for the CBA.

The school district then submitted the CBA's monetary provisions to the city council for approval, and the city council unanimously

rejected them. When the association demanded that the school district nonetheless honor the provisions of the CBA, the school district filed a petition for declaratory judgment, asking the PELRB to determine whether the school district "may legally fund the settlement which has been rejected by unanimous vote of the City Council." The association filed an answer to the school district's petition, asserting that the CBA was indeed binding on the school district without city council approval because no supplemental appropriation by the city council would be required to fund it. The city then filed an answer and a brief as intervenor and argued that the city council's disapproval of the CBA's monetary provisions rendered the contract unenforceable. Throughout the proceedings below, all three parties labelled these monetary provisions "cost items."

The PELRB agreed with the association that the city council's rejection of the monetary provisions did not prevent the school district from funding them. The PELRB concluded that these provisions were not actually "cost items" for purposes of RSA 273-A:3, II(b) because no supplemental appropriation by the city council would be required to fund them. In arriving at this judgment, the PELRB discussed RSA 273-A:3, II(b), but did not mention or allude to RSA 273-A:1, IV, which defines "cost items." The city moved for reconsideration and, upon denial by the PELRB, appealed to this court. Here, the association and the school district assert that the monetary provisions of their CBA are *not* "cost items," as defined by RSA 273-A:1, IV, but otherwise the parties generally repeat their arguments below.

We begin by setting forth the appropriate standard of review.

> "Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

RSA 541:13 (1974); *see* RSA 273-A:14 (1987).

■ ■ "In New Hampshire, the legislature has vested the PELRB with authority to define the terms of RSA chapter 273-A and to fill in any gaps in the statute," *Appeal of University System of*

*N.H.*, 131 N.H. 368, 370, 553 A.2d 770, 771 (1988), but where the statute already defines one of its terms, the PELRB must apply that definition, *cf. Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 303, 605 A.2d 208, 212 (1992) (basic precept of statutory construction is that definition of term in a statute controls its meaning). Here, the PELRB apparently failed to analyze RSA 273-A:1, IV, the statute which defines the term "cost items." Accordingly, we need not give deference to the PELRB's legal rulings on this determinative issue, and instead conduct an examination of the statute ourselves to ascertain the legislature's intent.

RSA 273-A:1, IV defines "cost item" as "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." The parties to this appeal do not dispute that the monetary provisions of the 1991–92 CBA between the school district and the association are "benefit[s] acquired through collective bargaining," and they all acknowledge that the city council is the "legislative body of the public employer with which negotiations [were] being conducted." The disagreement revolves around the words "whose implementation requires an appropriation" and, more particularly, the word "requires." The association and the school district argue that the monetary provisions at issue are not "cost items" because no additional appropriation by the city council would be required to implement them. The city, on the other hand, maintains that the provisions are "cost items" because they could not have been implemented without an appropriation. Our examination of the statute and related case law persuades us that the city is correct.

 We find that the statutory language supports the city's contention that the provisions are "cost items" because, in the literal sense, implementation of the provisions "requires an appropriation." That is, the provisions could not be implemented without an appropriation at some point in time. The school district argues that the phrase "requires an appropriation" should be construed to mean "requires a *supplemental* appropriation" because "requires" is written in the present tense. The use of the present tense, however, does not mean that "appropriation" refers only to a future event.

 Moreover, although the association and the school district would interpret RSA 273-A:1, IV to define "cost item" as "any benefit . . . whose implementation requires a *supplemental* appropriation," the word "supplemental" does not appear in the statute. A

reviewing court may not add words to a statute that the lawmakers did not see fit to include. *See State v. Doe*, 117 N.H. 259, 261, 372 A.2d 279, 280 (1977). If the legislature had intended to limit the term "cost items" as the association and the school district suggest, it could have inserted a word such as "supplemental" to modify "appropriation," or written the verb "to require" in the future tense.

Our decisions interpreting RSA chapter 273-A bolster our construction of the phrase "whose implementation requires an appropriation." For example, we held in *Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 520–22, 579 A.2d 282, 286–87 (1990), that a local legislative body may not be bound by a CBA without first being fully informed of the details of its financial terms. This holding would lose its vitality if the school district here could change those details whenever it thought it advisable. *See also City of Portsmouth v. Association of Portsmouth Teachers*, 134 N.H. 642, 647, 650, 597 A.2d 1063, 1066, 1068 (1991).

In *Appeal of Franklin Education Association*, 136 N.H. 332, 616 A.2d 919 (1992), a case involving two of the parties to this dispute, we discussed a situation almost identical to the one presented here. The parties signed a multi-year CBA for the 1989–92 school years in March 1990, "and the school [district] decided to fund the first year salary increases out of money the [city] council had appropriated for the school [district's] use several months earlier, in September 1989." *Id.* at 333, 616 A.2d at 920. The question presented in the present case, whether the CBA's monetary provisions are "cost items," was not an issue in *Franklin*, but we nonetheless called the provisions "cost items" throughout that opinion and addressed the parties' arguments concerning submission of these provisions to the city council as if they were, in fact, "cost items." For example, although the city council explicitly rejected the CBA's "cost items," the association argued that the city council impliedly ratified them because it "knew that the school [district] was funding the contract's first year cost items out of money that the [city] council had appropriated to the school [district]." *Id.* at 334, 616 A.2d at 920. We rejected this argument, stating:

> "The association's argument misses a central component of the *Sanborn* holding: the legislative body of a municipality (in this case, the [city] council) is bound by a multi-year contract only if it knew about the cost items for *each* year of the CBA at the time it voted to appropriate money for the contract's *first* year. Here, the [city] council did appropriate money that was eventually used by the school board to fund

the cost items of the CBA's first year. There is no evidence, however, that the [city] council knew of those cost items—let alone the cost items for the second and third years of the CBA—in September 1989 when it approved the appropriation; the parties did not reach even a tentative agreement until January 1990. We therefore hold that the [city] council did not impliedly ratify the CBA's cost items. As the [city] council explicitly rejected those cost items in May 1990, the April 1990 teachers' contracts, contingent upon the items' approval, are not binding."

*Id.* at 334, 616 A.2d at 920–21 (citations omitted); *see also Appeal of Milton School District,* 137 N.H. 240, 243, 625 A.2d 1056, 1059 (1993) ("each year's contract obviously contains cost items").

■ The association protests that *Sanborn, Franklin,* and *Milton* all dealt with multi-year, and not single-year CBAs, thus rendering them inapposite. The association states in its brief that "[d]ifferent considerations come into dispute in such different circumstances," but does not explain what these "[d]ifferent considerations" are. We do not see how the words of a statute can mean one thing in one circumstance and something entirely different in another. If monetary provisions are "cost items" in multi-year CBAs, they are "cost items" in single-year CBAs.

■ The school district also argues that the city council has no right to review the monetary provisions of the CBA insofar as they purport to spend the $66,235.97 the school district set aside to fund the expected CBA from the money appropriated by the city council. First of all, this argument wrongly assumes that we could divide the CBA into two parts—one funded by the $66,235.97 set aside by the school district, and one by the $67,811 surplus—and evaluate each separately for validity under RSA chapter 273-A. We cannot do this, for we would have no way of determining how the association and the school district would rewrite a $66,235.97 CBA.

■ Secondly, as explained above, the legislature has specifically determined that the school district must submit *"cost items"* to the city council for approval, not just its annual proposed budget. RSA 273-A:3, II(b). In June 1991, when the city council appropriated the money needed to fund the 1991–92 school budget, the CBA had not yet been ratified. As "cost items" are, at a minimum, "benefits acquired through collective bargaining," RSA 273-A:1, IV, no "cost items" could have been submitted to the city council at that time.

Thus, the city council did not have an opportunity to exercise its statutory right to review the monetary provisions of the CBA until the fall of 1991, when the CBA actually came into existence.

Finally, the association asserts that our interpretation of RSA 273-A:1, IV, defining "cost items," would require the school district to seek city council approval every time it encountered a cost overrun pursuant to a CBA as, for example, when a teacher has a child and requires more health insurance coverage. We disagree. RSA 273-A:3, II(b) does not require submission of a CBA's "cost items" more than once. Moreover, our interpretation of RSA chapter 273-A recognizes the city council's right to review the financial terms of a CBA in detail before approving or disapproving of them. Accordingly, the city council, along with the association and the school district, will know that the final cost of any CBA will ultimately depend on such unknown factors as mid-year personnel turnover or a teacher's family planning decisions. If the city council approves a CBA, it has no choice but to fund whatever benefits the teachers decide to enjoy pursuant to its terms.

In conclusion, we hold that the PELRB erred as a matter of law in ruling that the CBA's monetary provisions are not "cost items" and in ruling that the school district could fund the CBA out of money already appropriated by the city council. The city council properly exercised its discretion to disapprove of the "cost items," and therefore, "either party may reopen negotiations on all or part of the entire agreement." RSA 273-A:3, II(b); *see Franklin*, 136 N.H. at 334, 616 A.2d at 920–21.

*Reversed.*

BATCHELDER, J., with whom BROCK, C.J., joined, dissented; the others concurred.

BATCHELDER, J., dissenting: The public employee labor relations board (PELRB) is invested by the legislature with authority to define the terms of the chapter that created it, RSA chapter 273-A (1987). *Appeal of AFL-CIO Local 298*, 121 N.H. 944, 947, 437 A.2d 260, 262 (1987). As the majority notes, the PELRB's findings, upon all questions of fact, are "deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1974).

A "cost item" is "any benefit acquired through collective bargaining whose implementation *requires an appropriation* by the legisla-

tive body of the public employer." RSA 273-A:1, IV (1987) (emphasis added). Because the money to fund the benefits in the collective bargaining agreement (CBA) had already been authorized, no appropriation was required. Consequently, the monetary provisions of the CBA, on the facts of this case, were not "cost items."

The PELRB's ruling that "no 'cost item' was precipitated; therefore, submission for approval and rejection by the City Council on December 2, 1991 was both unnecessary and inappropriate," finds adequate support in the record and is in keeping with the spirit of the law. Under the circumstances presented, the PELRB's decision was neither unjust nor unreasonable. I would affirm its decision.

BROCK, C.J., joins in the dissent.