Public Employee Labor Relations Board
No. 94-199

## APPEAL OF TOWN OF RYE

## (New Hampshire Public Employee Labor Relations Board)

October 24, 1995

*Kidder & Burke*, of Laconia, and *Michael Donovan*, of Concord (*Bradley F. Kidder* and *Mr. Donovan* on the brief, and *Mr. Kidder* orally), for the petitioner, the Town of Rye.

*McKittrick Law Offices*, of North Hampton (*J. Joseph McKittrick* on the brief and orally), for the respondent, Robert L. Howland.

HORTON, J. The Town of Rye (town) appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) ordering it to pay the respondent, former Rye Police Officer Robert L. Howland, for the sick leave he accumulated prior to his retirement pursuant to a provision in an expired collective bargaining agreement (CBA) negotiated by the town and the Rye Fire and Police Association (association). For the reasons that follow, we affirm the PELRB's decision.

In December 1989, the association and the town signed a CBA, to be effective from January 1990 through December 1992. Two provisions are pertinent to this appeal. Article XXV contained an "evergreen clause," providing for the automatic renewal or continuance of the CBA after its expiration if negotiations for a successor CBA were still in progress. Article XIV stated that "[w]hen an employee leaves the department [he or she] shall be paid for any unused sick leave accumulated at the rate of 5% per year of full time employment with the town, not to exceed 100%."

Although the evergreen clause was not submitted to the town voters for ratification during any of the town meetings following the signing of the CBA, legislative action was taken with respect to the sick leave buyback provision. At the March 1990 town meeting, the town voted to establish a "Town Employees' Accumulated Leave Fund, for the purpose of funding Town Employees' accumulated leave accounts, and . . . raise[d] and appropriate[d] the sum of five thousand dollars ($5,000) towards this purpose." The minutes of the town meeting explain the reasons for the appropriation:

> Mr. Toby explained the need for a fund in case an employee retires and we have to pay accumulated vacation and sick leave. Frank Ciolek said he couldn't see why there wasn't a

policy of "use it or lose it". Lester Stevens said there should be a maximum. To this, Mr. Tobey said these are benefits which have been approved over a number of years. He said it's very difficult to take away a benefit which has already been given. Dr. O'Brien reminded that the town has a legal obligation to pay these, in the event an employee leaves. He said he felt the logical way to pay these was through accumulation in a capital reserve fund.

The town warrant had been posted prior to the meeting and was mailed to each registered voter. In addition, the Rye Civic League, Inc.'s newsletter, which was distributed to all households prior to the meeting, explained that the Town Employees' Accumulated Leave Fund and accompanying $5,000 appropriation were on the warrant because "[s]ome employees of the Town are nearing retirement age with many years of service to the Town and are entitled to be paid for their unused leave (sick leave/annual leave) according to their contract which could become a hardship in the budgetary process." The record contains an undated calculation by the town that if all members of the police and fire departments retired at once and claimed the accumulated sick leave due under the CBA, the town's total liability as of December 1989 would be $100,586.43.

At the 1991 town meeting, in response to "a recent N.H. Supreme Court decision requiring acceptance by the legislative body of multi-year contracts," the town voted "to ratify the financial terms" of the CBA. Estimated wage and benefit increases for 1991 and 1992 were approved and funds were appropriated for health insurance benefits paid in 1990 and the 1991 wage increase, but there is no indication that the Town Employees' Accumulated Leave Fund was discussed. The former town selectman who negotiated the CBA testified before the PELRB that the accumulated sick leave buyback provision was intentionally not resubmitted at the 1991 town meeting because it had been approved at the 1990 town meeting.

From 1991 through 1993, the town appropriated sums from its capital reserve account and placed them into the Town Employees' Accumulated Leave Fund, bringing its total to approximately $50,000 at the time of the PELRB hearing. Two town employees retired during 1992 and were paid their respective leave accruals pursuant to the CBA, although these payments were not made from the Town Employees' Accumulated Leave Fund.

At the March 1993 town meeting, the town voters passed a resolution asking the selectmen to "make an in-depth review of the subject of accumulated sick leave," noting, in particular, that

payment of large sums, in excess of $30,000 in one case, "has raised questions." At a special town meeting in September 1993, the town approved a new CBA containing a limited sick leave buyback provision and rejected an alternative provision that would continue funding the expired CBA's accumulated sick leave provision.

The respondent retired in June 1993, after twenty-two years of service, and claimed $42,731.40 for 229 days of accumulated sick leave. The town denied his claim, stating that the CBA provision "which extended a payout for accumulated sick leave was a cost item. However, it was not submitted [to a] Town Meeting for approval. . . . The Town has not appropriated funds to pay the amount you claim under the sick leave provision of the Agreement." The respondent submitted a grievance to the town selectmen, who affirmed the decision to deny his claim and denied arbitration.

In July 1993, the respondent and the association filed an unfair labor practice (ULP) complaint with the PELRB against the town, alleging a violation of RSA 273-A:5 (1987) for failing to pay accumulated sick leave benefits under the CBA. The PELRB found "not only that the Town committed a ULP by violating RSA 273-A:5 I (h) but also that Howland is owed money under the accumulated sick leave provisions of Article XIV, Section 1 of the CBA."

On appeal, the town argues that: (1) the PELRB failed to recognize or rule that the accumulated sick leave buyback provision was a cost item; (2) as a cost item, the provision was unenforceable because it was never approved by the town voters; (3) if the provision is unenforceable, the town did not create a binding past practice by making payments under the provision to two other employees who retired; and (4) the PELRB erred by relying upon the evergreen clause because that clause was a cost item that had not been approved by the town voters. We defer to the PELRB's findings of fact, and absent an erroneous ruling of law, we will not set aside the PELRB's decision unless the town demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable. RSA 541:13 (1974); *see also Appeal of State of N.H.*, 138 N.H. 716, 719–20, 647 A.2d 1302, 1305 (1994).

■ The PELRB made no express finding of fact as to whether the accumulated sick leave buyback provision was a cost item. A cost item is "any benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer with which negotiations are being conducted." RSA 273-A:1, IV (1987). The PELRB did find, however, that the town voted to "create an expendable general . . . trust fund . . . for the purpose of funding Town Employees' accumulated leave ac-

counts, and to raise and *appropriate* the sum of five thousand dollars ($5,000) towards this purpose." (Emphasis added.) We hold that the accumulated sick leave buyback provision was a cost item because its "implementation require[d] an appropriation by the legislative body." RSA 273-A:1, IV.

■ Our decision in *Appeal of Sanborn Regional School Board*, 133 N.H. 513, 579 A.2d 282 (1990), requires cost items like the accumulated sick leave buyback provision to be approved by the local legislative body. We held that RSA 273-A:3, II(b) (1987) requires the voters to be informed of the financial terms of each year of a multi-year CBA in order for those terms to be binding. *Id.* at 520, 579 A.2d at 285. Although voters are often apprised of the financial consequences of their actions through language in warrant articles, voters may be otherwise "sufficiently apprised of subject matter upon which favorable action will bind the district to monetary obligations extending over a term of years under a collective bargaining agreement." *Id.* at 522, 579 A.2d at 287. Therefore, we will review all evidence that tends to establish such knowledge to see if the cost item was properly ratified.

■ The evidence shows that the town voters were sufficiently informed of the financial impact of the accumulated sick leave buyback provision. At the 1990 town meeting, the town voters established the Town Employees' Accumulated Leave Fund and appropriated $5,000 for the fund. The town had calculated that the total accumulated sick leave liability under the CBA would be approximately $100,000 if all fire fighters and police officers retired at once. The minutes of the town meeting show that the voters approved the appropriation after learning that the town did not have a "use it or lose it" policy regarding accumulated sick leave or a maximum limit on the benefit. During the 1991, 1992, and 1993 annual town meetings, sufficient appropriations were made to the fund to bring its balance to approximately $50,000 as of the respondent's retirement. The parties stipulated that a $25,000 appropriation was made to the fund in 1992 from the town's capital reserve account. This appropriation was in a warrant article voted upon and approved at the 1992 town meeting.

■ "[R]atification requires knowledge, to some reasonable degree, of the extent of a cost item's financial burden, not just the fact of a burden." *Appeal of Alton School Dist.*, 140 N.H. 303, 313, 666 A.2d 937, 944 (1995) (emphasis deleted). The extent need not be precisely ascertainable at the time the cost item is approved, however, and resubmission to the voters is not necessary when the

financial burden exceeds expectations. *Appeal of City of Franklin,* 137 N.H. 723, 730, 634 A.2d 1000, 1005 (1993).

> RSA 273-A:3, II(b) does not require submission of a CBA's "cost items" more than once. Moreover, our interpretation of RSA chapter 273-A recognizes the city council's right to review the financial terms of a CBA in detail before approving or disapproving of them. Accordingly, the city council, along with the association and the school district, will know that *the final cost of any CBA will ultimately depend on such unknown factors as mid-year personnel turnover or a teacher's family planning decisions. If the city council approves a CBA, it has no choice but to fund whatever benefits the teachers decide to enjoy pursuant to its terms.*

*Id.* (emphasis added). The respondent's claim under the CBA's accumulated sick leave provision is exactly the sort of situation we contemplated in *Appeal of City of Franklin.* Accordingly, we conclude that the evidence demonstrates that the town voters were sufficiently informed of the financial consequences of the accumulated sick leave buyback provision for the provision to be binding. *See Appeal of Sanborn Regional School Bd.,* 133 N.H. at 522, 579 A.2d at 287.

■ The PELRB found that, pursuant to the evergreen clause, the parties were operating under the terms of the expired CBA when the respondent retired in 1993. There is no evidence in the record that the evergreen clause, which is a cost item, *Appeal of Milton School Dist.,* 137 N.H. 240, 243, 625 A.2d 1056, 1058–59 (1993), was ever submitted to and approved by the town voters. The PELRB's finding is therefore unreasonable, RSA 541:13, and we hold that the board erred in finding that the evergreen clause was in effect when the respondent retired.

■ In the absence of an enforceable evergreen clause, the parties to an expired CBA must maintain the status quo. We find that the parties were placed in the status quo following the expiration of the 1990–1992 CBA. In contrast to operation under an evergreen clause, where the expired CBA continues in effect, "the principle of maintaining the status quo demands that all terms and conditions of employment remain the same during collective bargaining after a CBA has expired." *Id.* at 247, 625 A.2d at 1061; *cf. Appeal of Alton School Dist.,* 140 N.H. 303, 666 A.2d 937 (preserving the status quo requires that health insurance benefits be maintained without a change in substance or effect, and that raises for

additional education be granted, but does not require salary increases to reflect additional years of experience); *Appeal of Milton School Dist.*, 137 N.H. at 247, 625 A.2d at 1061 (CBA provision relieving teachers from mandatory lunch supervisory duties was condition of employment that must be maintained during status quo).

■■ Thus, we must decide whether the accumulated sick leave buyback provision is a term or condition of employment that must be maintained during the status quo. We find that it is. The benefit vested when the CBA was in effect and must be maintained, without change in substance or effect, during the status quo period. *Cf. Appeal of Alton School Dist.*, 140 N.H. at 315, 666 A.2d at 945. We note that the status quo preserves a term or condition of employment only until the collective bargaining process results in a new CBA. The new CBA may increase, decrease, or even eliminate the benefit.

Our finding that the accumulated sick leave buyback provision was enforceable during the status quo means that we need not address the issue of whether the town created a binding past practice. We affirm the PELRB's ruling that former Officer Howland is owed money under the accumulated sick leave provision. We also affirm its order directing "the parties to proceed forthwith to binding grievance arbitration as to the manner of calculation and amount of the financial entitlement due Howland."

*Affirmed.*

All concurred.