MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2013 ME 63
Docket:      Ken-12-524
Argued:      May 14, 2013
Decided:     July 2, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

CITY OF AUGUSTA

v.

MAINE LABOR RELATIONS BOARD et al.

SAUFLEY, C.J.

[¶1]   We are asked in this appeal to review the Maine Labor Relations Board's determination that certain employee retirement benefits are part of the static status quo that must be maintained when negotiations are underway after the expiration of a collective bargaining agreement between a public employer and its employees.  The Board determined that Augusta firefighters who retired after the expiration of the collective bargaining agreement between the City of Augusta and the firefighters union, Local 1650, IAFF, AFL-CIO-CLC, but were otherwise qualified to receive retiree health insurance benefits, were entitled to retiree health insurance benefits under the expired agreement's terms in order to preserve the static status quo when no arbitration was underway.

[¶2]   The City now appeals from a judgment entered in the Superior Court (Kennebec County, *Murphy, J.*) affirming that determination.  Amicus curiae

2

Maine Municipal Association challenges the Board's jurisdiction to make a determination regarding the static status quo. We affirm the judgment.

## I. BACKGROUND

[¶3] In January 2010, the City of Augusta and the firefighters' union entered into a six-month collective bargaining agreement that expired on June 30, 2010. As part of the collective bargaining agreement, the City agreed to cover certain retiree health insurance benefits. At issue here is the following provision:

> Employees hired before March 1, 1991 – When a firefighter retires with a minimum of twenty (20) years of creditable service with the City of Augusta, Fire Department, and in good standing, the City will pay 100% of employee hospital insurance benefits until such time as eligible for Medicare coverage. Dependent coverage may be picked up at group rate at employee's full cost.

> Employees hired by the Fire Department between March 1, 1991 and December 31, 2005 – When a firefighter retires with a minimum of twenty-five (25) years of creditable service with the City of Augusta, Fire Department, and in good standing, the City will pay 100% of employee hospital insurance benefits until such time as eligible for Medicare coverage. Dependent coverage may be picked up at group rate at employee's full cost.

> Employees hired by the Fire Department on or after January 1, 2006 are not eligible for any city contribution toward retiree health insurance.

> Employees hired by the Fire Department on or before December 31, 2005: After such time the employee is accepted for Medicare coverage, the City will pay 100% of the reduced premium for the employee only. Dependent coverage may be picked up at group rate at employee's full cost.

[¶4]   When the six-month contract expired on June 30, 2010, no new contract had yet been agreed upon, and the parties continued to negotiate.  For eligible employees retiring after June 30, 2010, the City declined to honor the retiree health insurance provisions because the contract had expired.

[¶5]   On September 1, 2010, the firefighters' union filed a prohibited practice complaint with the Maine Labor Relations Board alleging that the City of Augusta violated its obligation "[t]o confer and negotiate in good faith." 26 M.R.S. § 965(1)(C) (2012); *see also* 26 M.R.S. § 964(1)(E) (2012) (prohibiting public employers from "[r]efusing to bargain collectively with the bargaining agent of its employees as required by section 965").  According to the complaint, the City implemented its understanding of a static status quo instead of complying with an "evergreen clause" contained in separately executed ground rules for negotiations that called for the existing agreement to remain "in full force and effect" until the negotiation of a successor agreement.

[¶6]  After the City filed its response and the parties presented evidence at a May 2011 hearing, the Board accepted post-hearing briefs on the issue of the static status quo.  The Board entered an interim order in August 2011 in which it requested additional briefing regarding the nature of the status quo that must be maintained when a collective bargaining agreement has expired.  The Board reasoned that it was "incumbent upon the Board to resolve" the enforceability,

4

during continuing negotiations, of the retiree health insurance provision of the agreement, which required that 100% of health insurance costs be paid by the City for certain retirees.

[¶7] After the parties submitted their additional briefs, the Board entered two decisions. In one, the Board dismissed the prohibited practice complaint that alleged a violation of the evergreen clause because, although the ground rules containing that clause had been agreed to by the City's negotiator, the City had not ratified those ground rules. The Board also determined that the statutorily mandated "static status quo" controlled the City's actions. *See* 26 M.R.S. §§ 964-A(2), 965 (2012); *Bd. of Trustees of the Univ. of Me. Sys. v. Assoc'd COLT Staff of the Univ. of Me. Sys. (COLT)*, 659 A.2d 842, 845-46 (Me. 1995); *Mtn. Valley Educ. Ass'n v. Me. Sch. Admin. Dist. No. 43*, 655 A.2d 348, 351-52 (Me. 1995); *Lane v. Bd. of Dirs. of Me. Sch. Admin. Dist. No. 8*, 447 A.2d 806, 809-10 (Me. 1982).[1] In a second, separate decision, the Board determined that the status quo to be maintained following expiration of the collective bargaining agreement included 100% payment of the firefighter retirees' health insurance for those firefighters who qualified pursuant to the plain terms of the collective bargaining

---

[1] The term "static status quo" appears only in section 964-A, based on a 2005 amendment. P.L. 2005, ch. 324 (effective Sept. 17, 2005). Section 965 was not simultaneously amended, and language addressing the "static status quo" was never added to that provision. Accordingly, we look to applicable case law that preceded the statutory inclusion of the term.

agreement, even if those firefighters retired after the expiration of the collective bargaining agreement.

[¶8]  The City petitioned for review of the Board's decision regarding the retiree health insurance benefits in the Superior Court.  *See* 26 M.R.S. § 968(5)(F) (2012);[2] M.R. Civ. P. 80C.  The court affirmed the Board's determination, and the City appealed to us.  *See* 26 M.R.S. § 968(5)(F);[3] M.R. Civ. P. 80C(m); M.R. App. P. 2.

## II.  DISCUSSION

### A.  Board Jurisdiction

[¶9]  Initially, we address the challenge to the Board's jurisdiction.[4]  The Maine Municipal Association argues that the Board lacks jurisdiction to resolve a grievance involving a static status quo issue unless and until an arbitration of the grievance has begun.  MMA's argument is that the Board acted ultra vires because "the action itself is beyond the jurisdiction or authority of the administrative body to act."  *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 12, 868 A.2d 172.

---

[2]  Although this paragraph was amended after the City petitioned for review, *see* P.L. 2011, ch. 559, § A-26 (effective Aug. 30, 2012), the amendment did not alter the right to petition in any way of consequence to this appeal, and we cite to the current statute.

[3]  Neither party requested an expedited process.

[4]  The jurisdictional issue was raised by the amicus curiae.  Because the question relates to the Board's jurisdiction and authority to act, we address the question despite a lack of full briefing by the parties themselves.  *See Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 12, 868 A.2d 172; *D'Amato v. S.D. Warren Co.*, 2003 ME 116, ¶ 19 n.5, 832 A.2d 794; *see also* M.R. App. P. 4(d).

6

[¶10] Specifically, MMA contends that the Board is authorized to consider static status quo issues only pursuant to the statute entitled, "Continuation of grievance arbitration provisions":

> If a contract between a public employer and a bargaining agent signed after October 1, 2005 expires prior to the parties' agreement on a new contract, the grievance arbitration provisions of the expired contract remain in effect until the parties execute a new contract. *In any arbitration that is conducted* pursuant to this subsection, an arbitrator shall apply only those provisions enforceable by virtue of the static status quo doctrine and may not add to, restrict or modify the applicable static status quo following the expiration of the contract unless the parties have otherwise agreed in the collective bargaining agreement. All such grievances that are appealed to arbitration are subject exclusively to the grievance and arbitration process contained in the expired agreement, and the board does not have jurisdiction over such grievances. The arbitrator's determination is subject to appeal, pursuant to the Uniform Arbitration Act. *Disputes over which provisions in an expired contract are enforceable by virtue of the static status quo doctrine first must be resolved by the board, subject to appeal pursuant to applicable law. The grievance arbitration is stayed pending resolution of this issue by the board.* The board may adopt rules as necessary to establish a procedure to implement the intent of this section. Rules adopted pursuant to this subsection are routine technical rules as defined in Title 5, chapter 375, subchapter 2-A. Nothing in this subsection expands, limits or modifies the scope of any grievance arbitration provisions, including procedural requirements.

26 M.R.S. § 964-A(2) (emphasis added). According to MMA, when no arbitration grievance has been brought, the Board lacks the authority to "first" resolve "[d]isputes over which provisions in an expired contract are enforceable by virtue of the static status quo doctrine." *Id.*

[¶11] MMA's argument overlooks the language of the statute that brought this issue before the Board: 26 M.R.S. § 968(5)(A) (2012), which empowers the Board "to prevent . . . any public employer . . . from engaging in any of the prohibited acts enumerated in section 964." Section 968 authorizes a public employee organization or bargaining agent such as the union in this matter to file a complaint alleging a prohibited practice. 26 M.R.S. § 968(5)(B) (2012). After hearing and argument, if the Board finds by a preponderance of the evidence that "any party named in the complaint has engaged in or is engaging in any such prohibited practice," the Board may enter an order requiring that party to "cease and desist from such prohibited practice." 26 M.R.S. § 968(5)(C) (2012).

[¶12] Here, when the Board became aware of the issue regarding the continuity of retiree health insurance benefits during the course of a prohibited practice complaint, it ordered briefing and argument on the issue, and it entered a decision on the matter. Given the broad language of section 968(5)(A) and (B), the Board acted within its jurisdiction and authority in addressing the reach of the static status quo as a part of the prohibited practice proceeding before it. *See COLT*, 659 A.2d at 845-46 (interpreting a comparable statute governing labor relations in the University of Maine System to require a static status quo enforceable by the Board). The Board is the proper entity to rule on questions

8

about whether a particular provision in an expired collective bargaining agreement remains in force due to the static status quo doctrine.[5]

B.    Retiree Health Insurance Benefits

[¶13]  The City argues that maintaining the static status quo in this situation means that the City need not provide health insurance coverage to any employee who retired after the expiration of the collective bargaining agreement.  According to the City, qualified employees had the right to elect to retire during the term of the agreement if they wished to receive the retiree health insurance benefit.

1.    Standards of Review

[¶14]    In an appeal from a Superior Court judgment entered upon intermediate appellate review of a Board decision, we "review the Board's decision directly for error of law, abuse of discretion, or clear error."  *COLT*, 659 A.2d at 844 (citation omitted).  In that review, we will "defer to the agency's interpretation and application of the statute" when the administration of that statute has been entrusted to the agency by the Legislature.  *AFSCME Council 93 v. Me. Labor Rels. Bd.*, 678 A.2d 591, 593 (Me. 1996).

---

[5]  *See also* Comm. Amend. A to L.D. 1123, No. H-492, Summary (122d Legis. 2005) (stating, in adopting the current version of 26 M.R.S. § 964-A, the intention to "give[] the Maine Labor Relations Board authority over disputes concerning the application of the static status quo doctrine, as well as rulemaking authority to implement the amendment's purposes").

2.    "Static Status Quo" and the Prohibition of Unilateral Changes to Collective Bargaining Agreements

[¶15]  In Maine, as part of the statutory duty to bargain collectively in good faith, a public employer and the employees' representative may not make unilateral changes to certain contractual provisions during post-contract negotiation while bargaining is underway and before impasse is reached.  *Mtn. Valley Educ. Ass'n*, 655 A.2d at 351-52; *Lane*, 447 A.2d at 809-10; *see* 26 M.R.S. § 965 (describing municipal public employers' and employee bargaining agents' obligation to bargain collectively); *see also* 26 M.R.S. § 964(1)(E), (2)(B) (2012) (prohibiting municipal public employers and employee bargaining agents from refusing to bargain collectively as required by section 965); *Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 180 (1971) ("[T]he future retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining.").

[¶16]  To prevent unilateral changes from being made, when a collective bargaining agreement has expired and the negotiation of a new contract is underway, "[t]he parties are required to maintain the *status quo* while bargaining." *Mtn. Valley Educ. Ass'n*, 655 A.2d at 352.  This status quo must be maintained until a new agreement is ratified or the parties reach a bona fide impasse.  *See id.*;

10

*Teamsters Union Local #340 v. Portland Water Dist.*, 651 A.2d 339, 342 (Me. 1994).[6]

[¶17]  In interpreting the meaning and reach of the "status quo" in 1995, we held that the Maine Labor Relations Act required the University of Maine to maintain a "static status quo," not a "dynamic status quo," when the parties were negotiating a collective bargaining agreement after the existing agreement had expired.  *COLT*, 659 A.2d at 845-46.  The "dynamic status quo" advocated by the clerical, office, laboratory, and technical staff of the University would have required the University to continue paying annual step increases on the terms set forth in the expired agreement.  *See id.* at 843 & n.1, 845.  We held that implementing such a dynamic status quo was contrary to the legislative intent expressed in the plain language and history of the labor statutes, and would obligate public employers to pay substantial wage *increases* that were not approved by their governing bodies.  *Id.* at 846.  In short, we held that step increases would "change[], rather than maintain[], the status quo," which would undermine the legislative purpose to "protect municipal and state agency budgets from increases in wages imposed without agreement by the governing body."  *Id.* at 845-46; *see also AFSCME Council 93 v. State of Maine, Dep't of Admin. & Fin.*

---

[6]  There is no assertion that impasse was reached in this matter.

*Servs.*, M.L.R.B. Nos. 03-13 & 04-03 at 22 (Apr. 21, 2004) (following the holding of *COLT*).

[¶18]   Following our ruling in *COLT*, the Legislature incorporated the concept of the "static status quo" into the municipal employee collective bargaining statutes.  *See* 26 M.R.S. § 964-A(2).  In applying the holding of *COLT*, the Board has held that, if a collective bargaining agreement requires the employer to pay a certain percentage of the annual cost of a health insurance premium, the employer continues to be responsible for paying that percentage if the costs increase during negotiations following the expiration of the agreement.  *See Me. State Employees Ass'n v. Lewiston Sch. Dep't*, M.L.R.B. No. 09-05 at 3, 11-12 (Jan. 15, 2009).  The static status quo is also maintained, as the Board held before our decision in *COLT*, when a government employer continues to pay the specific dollar amount for active employees' health insurance set forth in an expired collective bargaining agreement that defines the benefit in specific dollar amounts rather than a percentage.  *See Teamsters Union Local 340 v. City of Augusta*, M.L.R.B. No. 93-28 at 24-26 (Jan. 13, 1994).

[¶19]   Here, the health insurance premium contribution for retired employees was set at 100% by the contract.  That retiree benefit, established by the collective bargaining agreement as a future benefit for current employees, cannot be reduced by the City, here to 0%, without constituting a unilateral modification.

12

In other words, to preserve the status quo, an employee whose status changed from active to retired would be entitled to receive benefits in place for retirees as set forth in the expired agreement. *Cf. Appeal of Town of Rye*, 666 A.2d 948, 950, 952-53 (N.H. 1995) (holding that, unlike step-increase provisions, a provision for the buyback of accumulated sick leave upon leaving employment must be maintained during the status quo period); *Appeal of Alton Sch. Dist.*, 666 A.2d 937, 942 (N.H. 1995) (holding that, to maintain the status quo, pay increases based on increased education, unlike step increases, must continue).

[¶20] If the parties had negotiated an agreement that explicitly restricted the payment of retiree health insurance benefits to the term of the agreement, the City's argument would have traction. Similarly, if the contract required the City to pay an amount certain, rather than 100%, the City's expenses would not increase with rising insurance costs. Because of the broad language of the agreement here, however, and given our deference to the Board in the construction of a statute entrusted to it by the Legislature, *see AFSCME Council 93*, 678 A.2d at 593, the Board did not err in concluding that the City must continue to pay the identified class of retirees 100% of retiree health insurance benefits during negotiations in order to maintain the static status quo.[7]

---

[7] The City urges us to analogize the present case to *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1008-11 (6th Cir. 2009), in which the United States Court of Appeals for the Sixth Circuit held that retiree medical benefits had not "vested" during the term of the collective bargaining agreement for those

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Stephen E. F. Langsdorf, Esq., and Jonathan G. Mermin, Esq., Preti Flaherty, LLP, Augusta, for appellant City of Augusta

Lisa Copenhaver, Esq., Maine Labor Relations Board, Augusta, for appellee Maine Labor Relations Board

Douglas L. Steele, Esq., Woodley & McGillivary, Washington, DC, and Howard T. Reben, Esq., Reben Benjamin & March, Portland, for appellee IAFF Local 1650

Susanne F. Pilgrim, Esq., Maine Municipal Association, Augusta, for amicus curiae Maine Municipal Association

**At oral argument:**

Stephen E. F. Langsdorf, Esq., for appellant City of Augusta

Lisa Copenhaver, Esq., for appellee Maine Labor Relations Board

Douglas L. Steele, Esq., for appellee, IAFF local 1650

Kennebec County Superior Court docket number AP-11-64
FOR CLERK REFERENCE ONLY

_____

private employees who had not retired before the agreement expired. For several reasons, this case is inapposite. The employer in *Winnett* was a private employer, not a public employer, so its employees could—and did—strike, and the employer could—and did—implement its last best offer upon that strike. *Id.* at 1003. The court was therefore determining not whether the expired agreement's terms persisted to maintain a static status quo but instead whether, under federal labor law, the employee's retiree benefits had "vested" as soon as he became eligible to retire. *Cf. Appeal of Town of Rye*, 666 A.2d 948, 950, 953 (N.H. 1995) (holding that an accumulated sick leave buyback provision, applicable when police officers left the town police department, "vested when the CBA was in effect and must be maintained, without change in substance or effect, during the status quo period").