ENTERED DEC 3 0 2014

STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
AUGUSTA
DOCKET NO. AP-14-38
REM-KEN- 12-11-14

MARANACOOK AREA
SCHOOL ASSOCIATION,
     Petitioner,

v.

**ORDER OF COURT**

R.S.U. NO. 38 SCHOOL BOARD
et al.,
     Respondents.

The undersigned heard oral argument in this matter on October 10th, 2014. In its M.R. Civ. P. 80C[1] complaint filed May 29th, 2014, the Maranacook Area School Association ("Association") alleges that the Maine Labor Relations Board ("MLRB") erred by concluding that enforcement of a salary step increase provision in the parties' expired collective bargaining agreement in arbitration under 26 M.R.S.A. § 964-A(2) was precluded by the Law Court's holding in *Board of Trustees of the University of Maine System v. Associated COLT Staff of University of Maine System*, 659 A.2d 842 (Me. 1995) (hereinafter "*COLT*"). The Association also claims the MLRB committed procedural errors by failing to honor the Association's request for a hearing in order to create a record and by the hearing officer declining the Association's request to recuse herself from the case "despite her conflict of interest."

In addition to the above, in its Brief and at oral argument the Association also claimed errors were made in relation to:

    a) The MLRB denying the Association's request to file a reply to R.S.U. No. 38 School Board's reply brief;

---

[1] Notwithstanding that petitioner's complaint states the matter is being brought pursuant to Rule 80B of the Maine Rules of Civil Procedure, the undersigned is confident that the matter is actually an 80C appeal, *see* 26 M.R.S.A. § 968(f); *City of Augusta v. Maine Labor Relations Bd.*, 2013 ME 63, ¶ 8, 70 A.2d 268, 271 (Me. 2013).

b) Failure of the MLRB to adopt rules "necessary to establish a procedure to implement the intent of 26 M.R.S. §964-A"; and

c) Refusal of the MLRB to allow an evidentiary hearing on the issue of recusal of the hearing officer.

## I. *Background:*

The Regional School Unit No. 38 ("RSU 38") is comprised of the municipalities in Manchester, Readfield, Wayne, and Mt. Vernon. The Association is the bargaining agent, within the meaning of 26 M.R.S.A. § 962(2) for a bargaining unit of teachers and certain other professional staff members employed by the RSU 38 School Board (the "School Board"). The most recent collective bargaining agreement ("CBA" or "Agreement") between the School Board and the Association expired on August 31, 2013. Record, Petition for Determination at Article 24. Upon expiration of the Agreement, the School Board continued to maintain the static status quo² with respect to all matters covered by the expired Agreement, including the salaries paid to bargaining unit members. Under the static status quo, employees are paid the same salaries they were paid before the contract expired, but do not receive the annual salary step increases set out in the Agreement.

On October 11, 2013, the Association filed a grievance alleging that salary step increases should have been given to the bargaining unit members effective at the start of the 2013-2014 school year. Record, Petition for Determination, Ex. B. The Superintendent and the School Board denied the grievance, and the Association notified the School Board by letter dated November 22, 2013 that it wished to proceed to arbitration with respect to the grievance. Record, Petition for Determination, Ex. C.

By cover letter dated December 11, 2013, the School Board filed a petition under 26 M.R.S.A. § 964-A seeking a determination that the salaries payable after the expiration of the Agreement were subject to the static status quo doctrine and that teachers could not claim a right to be paid experience step increases after the contract expired. Record, Item 2.

The Association filed a response to the Petition dated January 8, 2014, alleging that the MLRB had no jurisdiction to hear the Petition but did not make any arguments concerning the merits of the Petition. Record, Item 3. The School Board filed a brief dated January 31, 2013. Record, Item 4. The Association subsequently withdrew its jurisdictional objection. Record, Respondent's Brief,

---

² Courts across the country have developed the "status quo" doctrine that in reality consists of two "doctrines": the "static" status quo doctrine and the "dynamic" status quo doctrine. The static quo doctrine requires and permits public employers to pay only those wages in effect when the employment contract expires, unless the contract provides otherwise, while the dynamic status quo doctrine requires and permits a public employer to pay wages according to the wage plan of the expired agreement, including any scheduled step increases. *See COLT* at 846, 847 (Wathen, C.J. dissenting).

3/10/14. In an Interim Order dated March 21, 2014, the MLRB determined that no evidentiary hearing would be held and that the parties should submit written arguments. Record, Item 7.

The Association subsequently submitted a brief addressing the merits of the Petition (Record, Item 9), the School Board submitted a reply brief responding to the Association's arguments (Record, Item 10), and on May 15, 2014, the MLRB issued its Status Quo Determination (Record, Item 1).

## II.    *Standard of Review:*

The Court reviews the MLRB's decisions for "error of law, abuse of discretion, or clear error." *City of Augusta v. Me. Labor Relations Bd.*, 2013 ME 63, ¶ 14, 70 A.3d 268 (citing *COLT* 659 A.2d at 844). The Court will "defer to the agency's interpretation and application of the statute" when the administration of that statute has been entrusted to the agency by the Legislature. *Id.* (quoting *AFSCME Council 93 v. Me Labor Relations Bd.* 678 A.2d 591, 593 (Me. 1996). The Court grants the MLRB "considerable deference in constructing the Municipal Public Employees Labor Relations Law ("MPELRL"). *Mountain Valley Education Ass'n v. Me. Sch. Admin Dist. No. 43*, 655 A.2d 348, 351 (Me. 1995).

## III. *Issues:*

Whether the Salary Step Increase Provision in the Association and School Board's Collective Bargaining Agreement Continues to be Effective Following the Expiration of the Agreement in Light of The Law Court's Decision In *COLT*.

At the outset the undersigned notes that according to one author "[D]uring the 1960s and 70s, the spread of strikes by teachers prompted many states to enact collective bargaining statutes to codify the means of negotiations between teachers and school districts. Today, thirty-five states authorize collective bargaining and utilize mediation, fact-finding procedures, and/or arbitration procedures to settle bargaining impasses. In addition, in collective bargaining statutes, twenty-seven states now prohibit teacher strikes and eighteen states impose penalties for teacher strikes. As a result of this type of state legislation, both national and local teachers' unions have emerged as powerful entities that negotiate collective bargaining agreements on behalf of teachers...."[3]

Similar to this case, the Law Court in *COLT* addressed whether the University of Maine breached its duty to bargain in good faith by discontinuing the annual step increase in wages included in a collective bargaining agreement that had expired. *COLT*, 659 A.2d at 843. The alleged breach was based on an obligation to maintain the status quo following the expiration of a contract

---

[3] *See* "Educational Collective Bargaining: The Effect of Impasse Resolution Procedures on Public School Teachers", 5 Y.B. On Arb. and Mediation 341.

[4] The undersigned found the following of assistance in reaching the decision made in this matter: James C. May, *The Law And Politics Of Paying Teachers Salary Step Increases Upon Expiration Of A*

implicit in the requirement to bargain in good faith. *Id.* In the underlying proceeding, the MLRB determined that the University's failure to honor the annual step increases in wages constituted a unilateral change in the status quo prohibited by Maine law. *Id.* The Law Court disagreed with the MLRB and affirmed the Superior court's decision vacating the MLRB's decision based on considerations of fairness as well as the Legislature's intent to protect municipal and state agency budgets from increases in wages imposed without agreement by the governing body. *Id.* at 844-846.

In addition, *COLT* explained that "[b]eyond the unfairness of the dynamic status quo rule's application" the so-called dynamic status quo rule was in "contravention of the statutory language and the legislative history of Maine's public employment labor relations law." *Id.* The Law Court explained that the section imposing the duty to negotiate in good faith, and thus maintain the status quo when a contract expires, also provides that "neither party shall be compelled to agree to a proposal or be required to make a concession." *Id.* (quoting 26 M.R.S.A. § 1026(1)(C)). The payment of wages, the Law Court explained, can have an "enormous impact" on the University's budget and constituted a "substantial concession" by the University in direct contravention of the prohibition contained in section 1026(1)(C). *Id.* (citations omitted).

Furthermore, the Law Court found that other statutory provisions made clear that "the Legislature was careful to protect the public fisc from wage increases that were neither bargained for nor approved by the public employer" including section 1026(4)'s restriction that arbitrators may only recommend, and not bind parties as to salaries and pensions in Maine. *Id.* (citing 26 M.R.S.A. § 1026(4)). Finally, the Law Court explained that the "dynamic status quo rule...obligates the University to pay substantial increases in wages not approved by its trustees, and dramatically alters the status and bargaining positions of the parties. It changes, rather than maintains the status quo." *Id.* at 846. While the dynamic status quo rule could "be utilized in private sector labor law, and in some public sector labor law, its adoption by the [MLRB] is contrary to the intent of Maine's public employer labor statute as expressed it its plain language and history." *Id.* Accordingly, *COLT* provided a stern renunciation of the dynamic status quo rule as applied to wage increases for organizations governed by MPELRL.

Nevertheless, the Association attempts to distinguish *COLT*, by pointing to MLRB decisions from 1991 when the dynamic status quo rule was first adopted with the implication that they are still good law. However, as discussed above, *COLT* explicitly rejected the dynamic status quo rules in cases like the one before the undersigned, where an expired agreement provides for salary step increases. Furthermore, the Legislature "incorporated the concept of the 'static status quo' into the municipal employee collective bargaining statutes.'" *City of Augusta v. MLRB*, 2013 ME 63, ¶ 18, 70 A.3d 268 (citing 26 M.R.S.A. § 964-A(2) (providing in pertinent part that grievance arbitration provisions continue after

---

*Collective Bargaining Agreement*, 20 VT. L. REV. 753 (1996) and Steven J. Scott, *The Status Quo Doctrine: An Application To Salary Step Increases For Teachers*, 83 CORNELL L. REV. 194 (1997).

the expiration of a collective bargaining agreement, but only for provisions "enforceable by virtue of the static status quo doctrine")).

The Law Court's ruling in *COLT* and the Legislature's subsequent incorporation of the static status quo into MPELRL also undermines the Association's argument that *COLT* is distinguishable because it relied heavily on the "fairness" issue and the "budgetary" impact on the University System. The Association raises the "fairness" issue and then asserts that "if it were permitted to create an evidentiary record it would distinguish the facts in the *COLT* case by proving that placement of teachers on the RSU 38 salary plan occurs according to *total* teaching experience, including experience acquired outside RSU 38, as a dynamic wage *provision*, in accord with pre-contract wage treatment..." Pet.'s Brief, 4-5. Regarding the fairness issue, while *COLT* turned in part on considerations of fairness, the Law Court went beyond those considerations to generally denounce the dynamic status quo rule as to step salary increases for municipal employers. 659 A.2d at 845-46. Accordingly, unlike *COLT*, the parties were, or should have been, well aware of *COLT*'s rejection of the dynamic status quo rule.

Furthermore, regarding the "budgetary" impact, the Association has not alleged that it would be able to demonstrate the salary step increase it seeks would not require the School Board to pay substantial increases in wages that dramatically alter the status and bargaining positions of the parties in contravention of *COLT*. This is likely because the Agreement sets out the salary increases the teachers would receive. Record Petition for Determination, Ex. A, Appendix A (showing annual increases of at least approximately $900).

The Association also attempts to distinguish *COLT* by pointing to the MLRB's decision in *Me. State Employees Ass'n v. City of Lewiston*, MLRB No. 09-05 at 9 (Jan. 15, 2009) [Appendix 3 to MLRB's Brief] ("*Lewiston*"). In *Lewiston*, the Maine State Employees Association alleged that the Lewiston School Department violated MPLERL by unilaterally changing a term of employment after the expiration of the parties' collective bargaining agreement. *Id.* at 1. The issue presented in the case was whether increasing the employees' payroll deduction for health insurance premiums after the expiration of the collective bargaining agreement constituted a unilateral change by the School. *Id.* at 7. Upon expiration of the parties' agreement, the School kept its own contribution to the health insurance premium at the same dollar level and increased the amount deducted from the paychecks of each unit employee to cover the increase in the health insurance premiums imposed by the carrier. *Id.* *Lewiston* revolved around how to define the status quo. The School argued it should be "the dollar amount paid by the employer for health insurance premiums at the expiration of the agreement," while the association argued it should "be the percentage of the premium being paid by the employer and the employees at the expiration of the agreement." *Id.* at 7-8.

In accepting the association's definition of the status quo, *Lewiston* determined that the case was not controlled by *COLT*. *Id.* at 8-9, 11. *Lewiston* noted that the Law Court in *COLT* concluded that "requiring the employer to

5

continue granting step increases 'dramatically alters the status and bargaining positions of the parties" and that to "say the status quo includes a change and means automatic increases in salary is another." *Id.* at 8. Unlike *COLT*, in *Lewiston* the school's interpretation of the status quo presented a very significant change to the wages, hours and working conditions of the employees. *Id.* at 9. In particular, *Lewiston* explained that in dollar terms, the employees' increased contributions—in light of increasing insurance rates—was $244, $432, $550, and $669 for the different levels of coverage. *Id.* at 9. This ruling was based on the terms of the parties' agreement that established how the health insurance premium costs are shared between the employee and the Employer. *Id.* at 9. In other words, *Lewiston* determined that maintaining the status quo meant maintaining the proportion of the premium paid by the association and the school. *Id.* at 11. An analogous situation regarding wage increases would be, however unlikely, if the wage increases were keyed off paying the employees a certain percentage above the poverty line. This is not the situation in the present case, which involves facts nearly identical to *COLT*.

Finally, without explicitly saying so in its brief, but certainly suggesting it during oral argument, the Association urges the Court to not follow *COLT*. The Association argues that there is no rationale to permit the term regarding wages to be frozen upon contract expiration, while other provisions including paying for health insurance apply after expiration.[5] It is conceded that *COLT* was a 4-3 decision of the Law Court, with all the authors of that decision no longer on the present Law Court. Be that as it may, the Law Court has expressly ruled on the issue before this Court in *COLT*; moreover, if the present Law Court found any infirmities in the *COLT* decision the Court had the opportunity as recently as in *City of Augusta v. Me. Labor Relations Bd., supra*, to overrule *COLT*. It did not. Instead, the Law Court affirmed the Superior Court's decision to affirm the decision of the MLRB where, to preserve the status quo, an employee whose status changed from active to retired would be entitled to receive benefits in place for retirees as set forth in the expired agreement. 2013 ME 63, ¶¶ 18-20, 70 A.3d 268. It appears that at least three other collective bargaining states, New Hampshire, Pennsylvania, and Hawaii, also forbid payment of steps after contract expiration.[6]

Accordingly, this Court declines to overturn the MLRB's decision, and in effect overrule the Law Court's decision in *COLT*, because the MLRB properly looked at the terms of the expired agreement between the Association and RSU 38 and found no language reflecting the parties' intent to continue the payment of step increases irrespective of the *COLT* decision. *See AFSCME Council 93 v. State of Maine Dep't of Admin. Fin. Servs.*, MLRB No. 03-13 and 04-03 at 22 (rejecting AFSCME's attempt to find an agreement to continue step increases).

---

[5] This same argument was raised unsuccessfully by the dissent in COLT, *supra* at 847.

[6] *Appeal of Milton Sch. District*, 625 A.2d 1056 (N.H. 1993); *Fairview Sch. Dist. v. Commonwealth Unemployment Compensation Bd. of Review*, 454 A.2d 517 (Pa. 1982); Haw. Rev. Stat. §89-9(d) (1993).

## The Association's Request for an Evidentiary Hearing

The Association argues that the MLRB erred in refusing to permit a factual record to be made. The Association argues that if it were able to make a factual record it would have established:

1) RSU 38 knew or should have known about the prior holdings by the MLRB applying the dynamic status quo to prohibit expired terms in a collective bargaining agreement to be ignored;

2) Collective bargaining history, including previous bargaining agreements and the parties' respective positions leading to the current expired Agreement;

3) There is no inequity in applying step raises for total teaching experience under RSU 38's salary plan;

4) Procedural and economic advantage of an employer who permits a contract to expire negating salary increments which was already bargained for after the MLRB has previously recognized such factors as "a very real potential loss of income" and "an essential part of the compensation package" to be critical issues;

5) Application of dynamic status quo to provisions analogous to wages in expired agreements between the parties, including but not limited to "horizontal movement on the salary schedule" according to degree level and credit hours attained;

6) The budget and financial capacity of RSU 38;

7) The behavior of RSU 38 negotiators with respect to retroactivity issues; and

8) The Collective Bargaining Agreement.

The School Board responds that an evidentiary hearing would serve no purpose because the evidence the Association claims it would put forward has no bearing on the MLRB's status quo determination. The School Board argues the only relevant evidence is the text of the expired Agreement, which is already a part of the record.

The MLRB argues that it properly exercised its discretion in denying the Association's evidentiary hearing given the limited role of the MLRB under 26 M.R.S.A. § 964-A(2). The MLRB also argues that because its determination was grounded in the terms of the expired Agreement, an evidentiary hearing would only have muddied the distinction between resolving a dispute about whether a provision is enforceable under section 964-A(2) and ruling on the underlying grievance. Further, MLRB argues an evidentiary hearing would blur the distinction between processing a post-expiration grievance and a prohibited practice complaint alleging a post-expiration unilateral change.

In support, MLRB explains that the statement in section 964-A(2) that the MLRB does not have jurisdiction over grievances appealed to arbitration must be read in light of the fact that the MLRB has never had jurisdiction over grievances

of any sort. Accordingly, the MLRB, exercising its agency expertise, interpreted section 964-A(2) as precluding the MLRB from taking jurisdiction over a post-expiration unilateral change case when a grievance on the same matter has been appealed to arbitration and determined that an evidentiary hearing on a status quo determination runs the risk of turning the inquiry into a post-expiration unilateral change case. Record, Item 7, Interim Order, 2. Finally, the MLRB argues that its analysis of its responsibility under section 964-A(2) is entitled to considerable deference.

In its reply brief, the Association broadens and flushes out its argument claiming that the MLRB denied it procedural due process by not having an evidentiary hearing or established procedural rules regarding the status quo determination. In support, the Association cites to *Merrill v. Maine Public Employees Retirement System*, 2014 ME 100, -- A.3d ---.

In *Merrill*, the Law Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." 2014 ME 100, ¶ 21, --- A.3d --- (citation omitted). Courts analyze procedural due process claims by utilizing a two-step inquiry: 1) determine whether the government action has deprived the claimant of a protected property interest; and 2) if so, what process is due pursuant to the Fourteenth Amendment. *Id.* (citing *McNaughton v. Kelsey*, 1997 ME 182, ¶ 6, 698 A.2d 1049. "[The] dimensions [of a property interest] are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

In *Merrill*, the private interest was "the continued receipt of the benefit of participating in the [Group Life Insurance] Program" which, for purposes of due process, the Law Court determined was a statutorily created property interest. *Id.* *Merrill* determined that when the MLRB determines whether a member or retired member is required to make back payments of premiums for periods during which no coverage was in effect, certain minimal procedural requirements must be met in order to satisfy due process. *Id.*

In this case, the Association asserts the MLRB deprived the Association of its interest in the continuation of the right to receive previously negotiated wages after the expiration of a collective bargaining interest. In other words, the Association is claiming a risk of erroneous deprivation of property due to the MLRB's refusal to create a factual record and hold an evidentiary hearing. The Association does not offer any citations in support of this position. The *Merrill* court explained that "due process is flexible and calls for such procedural protections as the particular situation demands." 2014 ME 100 ¶ 22, ---A.3d --- (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). "In determining what process is due, we consider three factors: (1) the private interest that will be affected by the State action; (2) the risk of an erroneous deprivation of the property interest at issue; and (3) the Government's interest, including the

8

function involved and the administrative burden that additional or substitute procedural requirements will entail." *Id.* (citing *Balian v. Bd. of Licensure in Med.*, 1999 ME 8, ¶ 10, 722 A.2d 364).

Regarding the three factors *Merrill* determined:

1) The private interest was the possibility of the petitioner having to pay several thousands of dollars in insurance premiums for a product she never received in order to maintain coverage going forward. *Id.* at ¶ 23.
2) Although the MLRB retains the discretion to decide whether to waive insurance premium payments, "disclosing the standard that the [MLRB] will use in making that decision will permit members and retired members like the petitioner to intelligently present evidence pertinent to MLRB's consideration, assist the MLRB in making its decision, and enhance the court's ability to provide effective appellate review. *Id.* at ¶ 24.
3) Requiring the MRLB to provide parties with notice of the criteria it will consider in making its decision concerning waiver will not impose an unnecessarily heavy administrative burden on the MLRB. *Id.* at ¶ 25.

Accordingly, *Merrill* determined that "due process requires that, when considering whether to waive required payments pursuant to section 17103(6), the [MLRB] must do so by reference to a standard or standards that are made known to the parties, enabling them to present relevant evidence. Otherwise, the constitutional right to a hearing would be rendered meaningless." *Id.* at ¶ 26. Because the submission of briefs and oral arguments before the MLRB did not provide the petitioner an "adequate opportunity to present evidence relevant to the [MLRB's] criteria for evaluating whether to grant a waiver," on remand the MLRB had to consider the merits of the petitioner's request for a waiver in light of the standards it promulgates. *Id.* at ¶ 27.

Here, the Association raises two distinct questions: 1) did the MLRB abuse its discretion by denying an evidentiary hearing; and 2) did the MLRB deny the Association procedural due process by not setting out rules regarding the evidence to be considered. As to the first question, the Court grants the MLRB considerable deference in its interpretation of MPELRL. Accordingly, the MLRB's determination that holding an evidentiary hearing on the status quo determination ran the risk of turning the inquiry into a post-expiration unilateral change case does not appear to be an abuse of discretion, at least to the undersigned.

As to the second question, the Association has a private interest in not being deprived of the benefit of its alleged contractual bargain. Further, the MLRB does not appear to have any rules or implementing regulations regarding the process parties receive when arguing a status quo determination. This is in contrast to the MLRB's detailed rules regarding prohibited practice complaints.

9

Accordingly, it does not appear that it would be overly burdensome for the MLRB to promulgate rules laying out the procedure for the status quo determination. On the other hand, the present case is distinguishable from *Merrill* in that the question of what evidence the MLRB may consider does not impact the standard by which the MLRB will determine the status quo. The Association argued in its brief dated 3/10/14 that "a full evidentiary hearing by an expert tribunal…" was necessary as well as that "the deciding tribunal be one of impeccable credentials and not a management lawyer…." The School Board argued that none of the proffered evidence the Association was requesting a hearing to present would be relevant to the MLRB's determination as to whether enforcement of the salary escalator clause after the contract expired would be barred by the static quo doctrine except for the collective bargaining agreement itself[7], which was already part of the record. The MLRB determined for reasons stated in its "Interim Order Status Quo Determination" that conducting an evidentiary hearing would be "inappropriate…." Record, Item 7. It is difficult for the undersigned to determine what other evidence the Board would have found helpful in order to make a decision on the question raised. The MLRB obviously determined that it had all the necessary and relevant evidence, and thus simply directed the parties to submit briefs. The undersigned finds no denial of due process by the Board's process. *See City of Augusta v. Local 1650*, 2012 WL 5450584 (Me. Super. Oct. 12, 2012).

### III.    Removal of Labor Board Chairperson and Briefing Schedule

Similar to the procedural due process argument about implementing rules regarding the evidence to be considered in status quo determinations, the Association's arguments about the briefing schedule and removal of the MLRB Chairperson raise two distinct questions: 1) whether the MLRB's substantive determinations should be upheld; and 2) whether the MLRB denied the Association procedural due process by not setting out rules regarding recusal and the briefing schedule.

Regarding the first question, neither of the Association's arguments are persuasive. As discussed *supra* in Section I, the briefing schedule imposed mirrored the briefing schedule commonly utilized in civil proceedings, i.e. a petition, an opposition, and a reply to the opposition. Denying the Association a sur-reply to the School Board's reply is not an abuse of discretion. Similarly, this Court declines to find that the MLRB abused its discretion in refusing to recuse

---

[7] Section 964-A states that an arbitrator may not add to, restrict or modify the applicable static status quo…unless the parties have otherwise agreed in the collective bargaining agreement. There is no language that the Court can find in the agreement to support a contention that the parties have "otherwise agreed" to apply the step increases after the agreement's expiration. Moreover, Article 24 of the agreement entitled "Duration of Agreement" states in part "This agreement shall not be extended orally and it is expressly understood that it shall expire on the date indicated…"

the Chairperson, Ms. Rand, simply because she is a partner in a law firm that represents numerous employers.[*]

As to the second question, the MLRB does not have any rules guiding the parties as to the procedure or standard for removing an allegedly biased Chairperson or the briefing schedule in a status quo determination. Applying the procedural due process test, the Association's private interest remains the same, namely the private interest in not being deprived of the benefit of its alleged contractual bargain. As to the briefing schedule and recusal procedure, these issues appear less important than rules and regulations regarding the evidence considered. Accordingly, the risk of an erroneous deprivation of property is likely less regarding these issues. On the other hand, the MLRB would not face a heavy burden in implementing rules establishing a briefing schedule, or a process and standard for removing an allegedly biased Chairperson. It might be prudent for the MLRB to consider for future matters establishing some rules for more specific guidance when issues of this sort are raised; however, the undersigned is satisfied on the record presented here that there was no reason for the Chairperson to recuse herself, and that the briefing schedule did not result in any due process violation.

*IV. Conclusion:*

The Court affirms and upholds the Board's determination in this matter.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: December 11, 2014

BY _____
Robert E. Mullen, Justice
Maine Superior Court

---

[8] In point of fact counsel for the Association was complementary of the Chairperson's expertise during oral argument and struck the Court as making a point he was not **in fact** alleging any bias on the part of the Chairperson.

| Date Filed | 5/29/14 | Kennebec | Docket No. AP-14-38 | F |

Kennebec
County

Action: Petition for Review
80B

J. Mullen

| Maranacook Area School Association | vs. | RSU No. 38 School Board and Maine Labor Relations Board |

| Plaintiff's Attorney | Defendant's Attorney |

Plaintiff's Attorney

Howard Reben, Esq.
PO Box 7060
Portland, ME 04112-7060

Defendant's Attorney

Lisa Copenhaver, Esq. (MLRB)
90 State House Station
Augusta, ME 04333-0090

Bruce W. Smith, Esq. (RSU No. 38)
84 Marginal Way, Ste. 600
Portland, ME 04101

Date of Entry

| 5/30/14 | Rule 80B Complaint, filed 5/29/14. s/Reben, Esq. |

5/30/14    Rule 80B Complaint, filed 5/29/14. s/Reben, Esq.

6/16/14    Letter entering appearance for Maine Labor Relations Board and indicating the Board seeks affirmance of its 3/21/14 Status Quo Determination, filed. s/Copenhaver, Esq.

6/17/14    Entry of Appearance, filed. s/Smith, Esq.

6/23/14    Notice and Briefing Schedule issued.
Copy to Attys Reben, Copenhaver, Smith.

6/25/14    Acceptance of Service for R.S.U No. 38, filed (6/18/14). s/Reben, Esq.

6/25/14    Acceptance of Service for Maine Labor Relations Board, filed (6/18/14). s/Reben, Esq.

7/1/14    Record, filed 6/26/14. s/Copenhaver, Esq.

9/8/14    Oral Argument scheduled for October 10, 2014 at 10:00 a.m.
Notice to Attys Reben, Copenhaver, Smith

9/15/14    Brief of Petitioner, filed (8/1/14). s/Reben, Esq.

9/15/14    Brief of Respondent, filed (8/29/14). s/Copenhaver, Esq.

9/15/14    Brief of Respondent, filed (9/2/14). s/Smith, Esq.

9/15/14    Brief of Petitioner, filed. s/Reben, Esq.

10/27/14    Oral Argument, held (10/10/14).
Tape 1947 Index 810-2024.
Under advisement

12/11/14     ORDER OF COURT, Mullen, J.
             The Court affirms and upholds the Board's determination in this matter.
             Copy to Attys Reben, Copenhaver, Smith
             Copy to repositories

12/11/14     Notice of removal of Record sent to Atty Copenhaver